Argued May 2, affirmed May 23, 1916.

# MITCHELL *v.* HUGHES.*

(157 Pac. 965.)

**Vendor and Purchaser—Contract of Sale—Payment of Taxes—Waiver.**

1.   Under a contract for the sale of land providing for payment of the purchase price in installments and a forfeiture for default of conditions, an acceptance by the vendor of payment by a surety of a note given for part of the price did not indicate an intention on the part of the vendor to waive performance by the purchaser of a condition of the contract requiring it to pay the taxes when due.

**Vendor and Purchaser—Contract of Sale—Estoppel.**

2.   Since an estoppel arises where the act or declaration of one party has misled another to his prejudice in doing or failing to do an act, such acceptance from the surety did not estop the vendor from claiming the performance by the purchaser of the conditions of the contract requiring her to pay taxes when due.

**Vendor and Purchaser—Remedy of Vendor.**

3.   Under an agreement, in a contract for the sale of land for a price payable in installments, that on default of any payment or condition of the contract all payments should be forfeited to the vendor, the parties having agreed upon their own remedy for a breach, the

---

*As to the right of vendor to unpaid installments of the purchase price where the contract has terminated or been rescinded for default of vendee, see note in L. R. A. 1916C, 893; and as to who is responsible as between vendor and vendee for taxes accruing after sale but before title perfected in purchaser, see note in 43 L. R. A. (N. S.) 51, page 56, taking up the matter under a special contract.            REPORTER.

remedy is exclusive, and the vendor cannot compel the purchaser to pay.

### Vendor and Purchaser—Contract of Sale—Breach.

4. Since under such contracts, as in other cases, neither party can repudiate or cancel the contract for one purpose and insist upon its continued effect for another purpose, the purchaser cannot claim the right to possession and at the same time deny his obligation to perform.

### Vendor and Purchaser—Contract—Time—Essence Clause—Waiver.

5. Where a contract for the sale of land provides for payment by installments, and a forfeiture of all previous payments upon default of any condition of the contract, since courts do not favor forfeitures, if default occurs any acts or words showing recognition of the contract as still binding will be deemed a waiver of the time clause, and forfeiture cannot be thereafter declared at the option of the vendor, without notice and reasonable time afforded to perform.

### Vendor and Purchaser—Contract—Remedy.

6. In such a case, where the vendor undertakes to declare a forfeiture without affording reasonable time after notice, courts of equity will exercise jurisdiction to determine what is due, and what a reasonable time would be.

### Vendor and Purchaser—Contract—Default of Vendor.

7. Where such a vendor has wrongfully deprived the purchaser of opportunity to perform, or rendered that performance unavailing, money theretofore paid in reliance upon such contract will be refunded, less the value of use and possession.

### Vendor and Purchaser—Contract—Default of Vendor.

8. In such a case the courts will not, however, require that to have been done which would have been vain or useless, nor interfere with the freedom to contract, whatever the contract, may be, so long as the parties contract knowingly, and there was no fraud, duress or other acts vitiating the contract.

### Vendor and Purchaser—Contract—Breach.

9. And though the failure to perform is due to inability, so long as such inability is not due to violation of the contract by the vendor, its effect is the same as a voluntary refusal, since the courts cannot alter contracts or impose different terms than those the parties have stipulated.

### Vendor and Purchaser—Contract—Waiver.

10. Where the vendor, under a contract for the sale of land providing for payment by installments and for a forfeiture for violation of any condition, waived the time clause, the purchaser being delinquent in the payment of taxes, and telling vendor, when demand was made, that she could meet payments then past due, made no tender of payment thereafter, nor any showing of readiness to meet payment, either before or after the deed in escrow was withdrawn by the vendor, further notice and reasonable time for performance after forfeiture was waived, and the purchaser in legal effect consented to the termination of the contract under its terms.

Vendor and Purchaser—Contract—Notes.

11. Although a vendor, after canceling a contract for the sale of land providing for payment of the purchase price in installments and for forfeiture for default of any conditions cannot collect notes for payments falling due after he has retaken possession, where a note was given for an amount then due under the contract, when the purchaser was in possession thereunder, the existing debt being a prerequisite to a then right to continue in possession, the vendor was entitled to retain and collect it.

[As to forfeiture of vendee's rights, see note in 31 Am. Dec. 278.]

From Baker: GUSTAV ANDERSON, Judge.

In Banc. Statement by MR. JUSTICE McBRIDE.

This is a suit in equity by Georgia Mitchell against M. S. Hughes and M. S. Hughes, as administrator with the will annexed of the estate of Fannie Reynolds, deceased, arising out of the following facts:

In March, 1910, plaintiff entered into a contract to purchase from defendants M. S. Hughes and Fannie Reynolds a 40-acre tract of land in Eagle Valley, Baker County, including 74 shares of stock in the Dry Gulch Ditch Company, an irrigation corporation, which shares entitled the owner of the land to the use of irrigating water thereon. By the terms of the agreement plaintiff was to pay $4,000 for the land, $800 being paid at the time the agreement was made, and the remainder to be paid in installments running over a period of about four years, with interest upon the unpaid portion of the purchase price at the rate of 8 per cent per annum. Plaintiff also agreed to pay all taxes upon the land and all assessments that might thereafter become due upon the ditch stock. It was agreed that a deed to the land and the shares of stock should be deposited in escrow, to be delivered to the plaintiff when she should have complied with the terms of her agreement. There was a forfeiture clause in the contract, which is as follows:

"If said second party shall fail or refuse to observe the terms of this contract, and to make the payments by her by this contract agreed to be observed and made, all in strict accord with this contract, and at the times therein designated, then in that event said first parties, or either of them, may at once declare this contract canceled and any and all rights of second party hereunder shall at once cease; that in the event said first parties, or either of them, shall declare this contract canceled under the terms of the paragraph immediately preceding, said second party shall at once deliver up said real property, and the whole thereof, unto said first parties, and shall immediately vacate the same, and the whole thereof, and any holding over by second party after such declaration of cancellation and demand for possession by first parties shall be deemed holding by force under the laws of the State of Oregon. In the event of such cancellation of said contract, all moneys, whether paid directly to first parties or otherwise, shall be deemed forfeited by second party and considered as rental and liquidated damages."

On March 9, 1911, plaintiff, being unable to pay the interest then accumulated and due upon the unpaid portion of the purchase price, executed her promissory note for $256, due nine months after date, with interest at 8 per cent per annum, which note was given by her and accepted by defendants as payment of such interest. Upon this note the plaintiff afterward paid the sum of $50. On February 5, 1912, becoming dissatisfied with her purchase, a new contract was entered into containing substantially the same stipulations and forfeiture clause as the original agreement; but the purchase price of the land was reduced from $4,000 to $2,500, the $800 being credited as a payment upon this sum, and the accrued interest upon the original sum from the date of the March 9, 1911, note, was added to the purchase price, making the amount to be

paid in order to complete the contract $1,824, with interest at 8 per cent, said sum to be paid in installments, the last to fall due December 1, 1914. The contract, deed and stock were placed in escrow with the First National Bank of Baker upon the same terms as in the preceding contract. The first payment upon the purchase price, being $150, was to be paid immediately, and to secure this and interest on the principal sum plaintiff, together with her husband, James Mitchell, and A. N. Young executed a promissory note for $265.57, with interest at 8 per cent per annum, payable December 1, 1912, which was actually paid by Young, who was an accommodation maker, on December 11, 1912. In December, 1912, defendants commenced an action in the Circuit Court to recover the balance due upon the note given March 9, 1911, which balance, with interest, amounted to $210.45, and on January 4, 1913, recovered a judgment for that amount, together with $35 attorneys' fees and costs. The plaintiff failed to pay the last half of the taxes for 1912 and the assessments due upon the water stock, and allowed the same to become delinquent after being notified to pay them, and defendants were compelled to pay them to protect the property.

In December, 1912, and after the $265 note had been paid by Young, defendants notified plaintiff, through her husband, who is admitted by her to have been her agent throughout these transactions, that unless the delinquent taxes and assessments were immediately paid they would take the deed and stock from escrow and terminate the contract. Thereafter, on January 13, 1913, defendants notified plaintiff that they would withdraw the deed and water stock from escrow, and demanded that plaintiff should vacate the premises immediately, and remove her property therefrom, and

upon the following day withdrew the deed and water stock from escrow. Plaintiff did not remonstrate, or offer to pay the delinquent taxes or assessments, or to comply in any way with her contract, but in February, 1913, removed all her effects from the premises, and never returned or made any claim to further right of possession, claiming that defendants, by accepting the payment of the note given February 5, 1912, and paid December 11, 1912, waived the default of plaintiff occasioned by failure to pay the delinquent taxes, which default had accrued before the payment of the note. Plaintiff brings this suit to recover back the payments made by her upon the land, and to cancel the judgment obtained by defendants against her for the balance due upon the note given March 9, 1911, for the accrued interest upon the original purchase price. Upon issue joined, and trial, the court found for defendants, and plaintiff appeals.   Affirmed.

For appellant there was a brief over the names of *Mr. A. A. Smith* and *Mr. F. B. Mitchell,* with an oral argument by *Mr. Smith.*

For respondents there was a brief over the names of *Mr. William G. Smith, Jr.,* and *Mr. C. T. Goodwin,* with an oral argument by *Mr. Smith.*

Mr. Justice McBride delivered the opinion of the court.

1, 2. While this is in form a suit in equity, it amounts, in substance, to an action for money had and received; the only equitable feature being the attempt to cancel the judgment obtained upon the note given March 9, 1911. It is conceded that plaintiff, at the time defendants withdrew the deed and water stock

from escrow, was in default by reason of her nonpayment of taxes, and had been for some time, and that plaintiff's husband, who spoke for her and by her statement fully represented her, had expressed his entire inability to pay the amount; and we are satisfied from the testimony that defendants had informed him that unless plaintiff paid everything that was due up to date, including taxes and assessments, the contract would be forfeited. The defendant Hughes testified that, after the note signed jointly by Young, plaintiff's husband, and herself had been paid, he said to plaintiff's husband, "Now, Jim, I don't want any more trouble like I had in the last contract with you, but I sure will take the deed down if you don't pay," and that Mitchell said that he did not have the money to pay, whereupon Hughes said, "I thought that you were just putting me off until you got your money for your timber," to which Mitchell replied, in substance, that he had used the money to help out a relative, and that he would rather do that than to pay it on the place. We are satisfied from the evidence that, both before and after the payment of the note by Young, plaintiff was notified through her husband, and fully understood, that defendants intended to insist on the payment of the taxes and assessments as a condition for allowing the deed to remain in escrow, and that defendants also intended to insist on strict performance of the agreement, and never contemplated at any time waiving the condition in the agreement requiring the payment of taxes and assessments.

Where there is no intention to waive, there is no waiver, unless the conduct of the alleged waiver is such as to have misled the waivee to his prejudice. "Waiver involves both knowledge and intention; an estoppel may arise when there is no intention to mis-

lead.  Waiver depends upon what one himself intends to do; estoppel depends upon what he caused his adversary to do": 40 Cyc. 255.  In other words, waiver is a voluntary act or declaration, whereby the waiver surrenders some privilege or right.  In the case at bar, as before remarked, there is no evidence that defendants, when they accepted from Young the payment of the note upon which he was surety, intended to waive the performance by plaintiff of the conditions of her contract requiring her to pay the taxes when due.  Failure to pay defendants the amount which they had been compelled to pay to protect their property was a continuing breach, especially so when plaintiff's husband had told defendant Hughes that he could not raise the money to pay it.

Neither is there any estoppel arising from the fact that defendants accepted the payment made by Young An estoppel arises where the act or declaration of one party has misled another to his prejudice into doing or failing to do an act.  No estoppel is pleaded as such in the complaint or reply.  It does not appear that plaintiff in any way changed her attitude in regard to the property, or delayed or neglected to pay the taxes, upon the supposition that the performance of the condition had been dispensed with, or would not be insisted upon, by reason of the payment by Young of a note upon which he was jointly and severally liable with her and her husband.  She was unable to pay the taxes before the note was discharged, and was equally unable to pay afterward.  No estoppel is either pleaded or proved.

Upon the other features of this case the opinion of the learned judge who decided it in the court below is so clear and convincing that we adopt it as the opinion of this court; the material parts being as follows:

3–8. "That the payments for taxes and assessments were past due and delinquent, and that plaintiff did not pay or tender payment therefor, is also agreed upon and not disputed; but plaintiff proceeds on the theory that defendant has waived the time essence clause, with its attendant forfeiture and application of payments made as being for rent, etc., that defendant did not give direct notice of his election and intention to terminate the contract, and that therefore his withdrawal of the deed was such violation of the contract on his part as excused or waived performance on the part of plaintiff, and that therefore plaintiff would be entitled to be restored to her former position by being reimbursed of all that she had theretofore paid or performed under the contract. Defendant's evidence is to the effect that he gave and made specific notice and demand, but that is not admitted by plaintiff. The facts in the case that are undisputed and agreed upon are, however, decisive of the case, as this court understands the facts and the legal principles applicable, and it is therefore useless to undertake to determine the exact *status* of the disputed facts, or to construe what legal effect such notice and demand as are undisputed would have as bearing upon the question of election to declare the contract terminated. It is common experience that contracts of this nature are generally hazardous to the purchaser in particular, in that they are usually drawn with a view to give vendor ample security against the risks of the loss incident to parting with use and possession, while binding himself to not make other use or disposition of the property during the life of the contract, while the purchaser, not having the title, but only the use and possession, after part performance, undertakes to protect his investment by completing the performance and so become entitled to the property. Under such contracts the vendor cannot by any means compel the purchaser to pay anything whatsoever, if he, the purchaser, sees fit not to pay. As was said in *Potter Realty Co.* v. *Derby,* 75 Or. 563 (147 Pac. 551), where the vendor sought by an action at law to enforce payment of the purchase price: 'It it not unreasonable to

assume that the purchaser intended to reserve to himself the one small privilege of losing what money he might have paid, and thereby be automatically released from further obligation. The parties having agreed upon their own remedy for breach of the contract, that remedy is exclusive.' Under such contracts, as in other cases, neither party can repudiate or cancel the contract for one purpose, and insist upon its continued effect for another purpose. The purchaser cannot claim right to possession, and at the same time deny the obligation to perform the terms; nor can the vendor accept the benefits of performance after default, and at the same time claim forfeiture to have occurred prior to such performance. The rule is therefore well settled that, since courts do not in any event favor forfeitures if default occurs, any acts or words showing a recognition of the contract as still of binding effect, such as receiving the benefit of performance, will be deemed a waiver of the time essence clause; and forfeiture cannot thereafter be declared at the option of the vendor without reasonable notice and time afforded to the purchaser to perform; and in such cases, where the vendor undertakes to declare such forfeiture without affording such reasonable time after notice, courts of equity frequently exercise jurisdiction to determine what is due and what a reasonable time would be within which the purchaser's rights in the premises would be barred. And if such a vendor has wrongfully deprived the purchaser of opportunity to perform, or has so disabled himself from performance on his part that performance on the part of the purchaser would be unavailing, then in either of such events money theretofore paid in reliance upon such contract will be refunded, less the value of the use and possession: 39 Cyc. 1403, 1404. Courts, however, will not require that to have been done which would have been vain or useless, nor interfere with or destroy the freedom to contract, whatever the contract may be, so long as the parties contracted knowingly and the agreement was not procured by fraud, duress or other acts vitiating the contract.

9, 10. "The principles involved in the rule applicable to waiver of the time essence clause, with attendant forfeiture, are that the purchaser must in such cases be given a reasonable time and opportunity, consistent with his contract, to perform its terms and save that which he has invested from forfeiture, if he sees fit to perform within such reasonable time; but he cannot be compelled to perform, and, though failure to perform the terms is due to inability, so long as such inability is not due to violation of the contract by the vendor, its effect is the same as voluntary refusal would be, since the courts cannot alter contracts, or impose different terms than those the parties have stipulated. It is undisputed that a delinquency in the payments referred to existed prior to and at the time defendant made the insistent demands, and requested or notified plaintiff to remove the stock from the premises, and that plaintiff told defendant at the time that she could not meet the payments then past due, and that extension of time was neither asked for nor granted. Further, it is undisputed that no tender of payment was then or thereafter made, nor any showing of willingness or readiness to meet the payments, either before or after the deed was withdrawn, but that, after learning the deed had been withdrawn, that defendant's acts in the premises were acquiesced in. If it be assumed that defendant waived the time essence clause, then also did plaintiff by those acts waive the benefits incident to reasonable time and notice. In other words, further time and notice would have been unavailing, for by plaintiff's acts and words she also elected to terminate the contract relationship, in which event the terms of such termination, as stipulated for in the contract, were binding upon both. Further reasonable time could have served no purpose, no acts being shown indicating either willingness or readiness to abide by the contract further. In *Graham* v. *Merchant*, 43 Or., at page 305 [72 Pac., at page 1090], it is stated: 'It remains to be seen whether, after such election, he could rescind the contract without giving notice. "The law," says Mr. Justice Wood, in *Higby* v. *Whittaker*, 8 Ohio, 198, "requires

some positive act by the party who would rescind, which shall manifest such intention, and put the opposite party on his guard, and it then gives a reasonable time to comply; but it requires eagerness, promptitude, ability and a disposition to perform by him who would resist a rescission of his contract." ' Where the time essence clause has been waived forfeiture cannot be declared by the vendor without notice and granting reasonable time, unless rescission is consented to or mutually agreed upon, or performance is refused, or the failure to perform or to tender performance continues beyond a reasonable time. A purchaser cannot continue to fail or refuse to perform the conditions and terms, and still claim rights that are dependent upon such performance. Defendant's withdrawal of the deed did not prevent plaintiff from tendering performance within a reasonable time, and thereby keep in effect her rights under the contract. It is undisputed that the payments now sought to be recovered back were made under the contract, and while plaintiff was in possession by virtue of performing the contract. A vendee cannot fail or refuse, and continue in such failure or refusal, and thus rescind, and at the same time claim rights under the contract. He must do one or the other; either he must perform or tender performance, in order to insist upon the contract, or otherwise comply by surrender of possession. By continued failure to perform after demand he himself rescinds. 'The purchaser cannot take proceedings both in affirmance of the contract and also in rescission; he cannot maintain an action for damages in addition to rescinding the contract unless he has performed the conditions of such contract imposed upon him, or made tender thereof': 39 Cyc. 2000, 2001. 'Where one of the parties has abandoned the contract, the other thereupon has a choice of remedies. He may stand upon his contract, refusing assent to his adversary's attempt to rescind it, and sue for a breach, or, in a proper case, for a specific performance, or he may acquiesce in the abandonment and treat the contract as rescinded, and thus effect a dissolution of the contract by mutual and concurring assent of both parties. He

cannot, however, treat the contract as abandoned by the other party and at the same time enforce its obligation': Id., p. 1354.

"A rescission of such a contract by one of the parties thereto on the ground that the other has failed or refused to perform, whether such rescission is then acquiesced in or not, is of course to be distinguished from a case where one party attempts to rescind before default, and where the adverse party is ready, able, and willing to perform; and either of such cases differs from a case where by mutual consent, not resting on the ground of default, the contract is canceled as a whole, and each is restored to his original position as though such contract had not been made. In the case at bar the default occurred some time before the withdrawal of the deed, and has continued ever since, without any tender or offer to perform ever being made; whereas, a party suing to recover money paid under such a contract must first show that he himself was not in default, or that he was willing, able and ready to perform his part, and that such performance was prevented or refused by the other. A plaintiff in such a case cannot himself be in default, and continue to be so, and still insist upon rights under the contract that could, under its terms, exist only so long as the contract was being kept and fully performed. By withdrawing the deed after default and demand, the defendant merely asserted that right and remedy which the contract itself stipulated for; it being established that plaintiff was then and theretofore in default, and continued to be so, making no tender within a reasonable time or otherwise. The matter of granting reasonable time after default on the ground of time essence clause being waived is eliminated, precluded, and rendered futile by the acts and by the express averments of the pleadings. The complaint is a renunciation of any further continuance of the contract, and refers only to transactions had while the contract was in effect, and the pleadings and the evidence disclose that the default, upon the happening of which possession should be surrendered and payments theretofore made should be retained as rent and liqui-

dated damages, under the terms of the contract, actually took place before the deed was withdrawn, and that such default has ever since continued, without any tender ever being made in the meantime.

11. ''It was suggested at the argument that upon cancellation of the contract by defendant he must surrender the note given while the contract was in effect. It is perfectly true that under such contracts a vendor cannot collect notes for payments falling due after he has retaken possession, for that would be asserting the contract as in force for one purpose for his benefit and repudiating it for another purpose. But the facts must be kept in mind in applying. any rule. At the time the note was given plaintiff was in possession under the contract, and the amount for which the note was given was then due and payable, and was a then existing debt, and the payment of that debt then was a prerequisite to a then right to continue in possession. Having met that obligation by the note, and by virtue thereof having retained possession and use, to now hold that the note must be surrendered would be to repudiate the contract at the time the note was given, when plaintiff's possession and use of the premises continued by virtue of meeting the then existing obligation and payment then due by that note. The judgment rendered regularly, and which is not impeached, has become conclusive, and this court has no power to decree to the contrary on the state of facts presented. By acquiescing in the acts of defendant after he had made his demands, and withdrawn the deed, and by making no tender, the plaintiff in legal effect consented to the termination of the contract under its terms, and a court cannot impose other terms: *Miles* v. *Hemenway,* 59 Or. 334, 335 (111 Pac. 696, 117 Pac. 273). Defendant having the possession voluntarily surrendered, as well as the deed and stock certificates involved, any decree in the nature of strict foreclosure would, it seems to this court, be futile and serve no purpose; plaintiff asserting no claim, title or right to possession under the contract withdrawn, but demanding a remedy inconsistent with such claim.''

While defendants might well have dealt more generously with plaintiff, by returning all or a portion of the purchase money paid by her, they were under no legal obligation to do so. · They voluntarily reduced the purchase price from $4,000 to $2,500, and no fraud on their part is charged or proved as to the last contract. It is evident that plaintiff relied upon the exertions and business capacity of her husband to pay for the place, and in this both she and her husband were disappointed. It is equally evident that both had arrived at the conclusion that they could not pay for the place. Whether from the fact that it was intrinsically unproductive, or because plaintiff's husband was not a sufficiently skillful farmer to get the best out of it, is not clear, and is not material. While we sympathize with them in their losses, we are not at liberty to require the defendants to share them by returning that portion of the purchase money which by the terms of the contract they are entitled to retain.

The decree of the Circuit Court is affirmed.

AFFIRMED.

Mr. Justice Eakin absent.