Argued and submitted September 9, 1997, decision of the Court of Appeals affirmed in part and reversed in part; judgment of circuit court affirmed March 12, 1998

Maryls V. ALDERMAN,
now known as Vicki Alderman Forell,
*Respondent on Review,*

*v.*

Christine A. DAVIDSON,
and Sharon Mallory,
*Petitioners on Review.*

(CC 94-00184CV; CA A91510; SC S44089)

954 P2d 779

Paul B. Heatherman, of Ray A. Babb & Associates, Bend, argued the cause and filed the petition for petitioners on review.

Donald R. Crane, Klamath Falls, argued the cause and filed the brief for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Graber, Durham, and Kulongoski, Justices.**

GILLETTE, J.

** Fadeley, J., retired January 31, 1998, and did not participate in this decision.

**GILLETTE, J.**

In this action to foreclose real property, the issue presented is whether seller's repeated acceptance of late installment payments on the principal of a note constitutes a waiver of seller's right to insist on buyer's timely payment of taxes on the property to the local taxing authority. The trial court held that such repeated acceptance of late payments does constitute a waiver; it therefore dismissed the foreclosure action. On an appeal by seller, the Court of Appeals reversed, holding that, because seller did not accept late payments after becoming aware of the default in the payment of taxes, she did not waive that default. The Court of Appeals remanded with instructions to enter a judgment of foreclosure. *Alderman v. Davidson*, 146 Or App 282, 933 P2d 365 (1997). Although we accept the legal propositions on which the Court of Appeals based its ruling, we conclude that the Court of Appeals failed to give due consideration to the legal import of all the undisputed facts relevant to a determination of waiver. Giving those facts that consideration, we reverse the decision of the Court of Appeals in part and affirm the judgment of the circuit court.

■ Pursuant to ORS 19.415(3), the Court of Appeals reviewed the facts of this case *de novo*. This court also may review the facts *de novo*, or we may limit our review to questions of law. ORS 19.415(4). Because the facts relevant to the resolution of the issue before us are not in dispute, we decline to review the facts *de novo*. The following facts are taken from the findings of the Court of Appeals and from additional undisputed facts in the record.

Buyer purchased 120 acres of land in Lake County, Oregon, from seller in 1989. Buyer signed a note for the $24,000 purchase price, under which she agreed to pay $200 on the ninth of each month, and an additional $500 every other month on the twentieth of that month, until the purchase price was paid in full. In addition, to secure performance under the note, buyer entered into a trust agreement pursuant to which she agreed, as pertinent here, timely to pay the sums set forth in the note to an escrow agent and "to pay all taxes, assessments and other charges that may be levied or assessed upon or against said property before any part

of such taxes, assessments and other charges become past due or delinquent and promptly deliver receipts therefor to [seller]." The trust agreement further provided that time was of the essence with respect to all payments and performances required of the buyer under the agreement. It granted seller the right to accelerate the balance due under the note and to initiate foreclosure proceedings in the event of a default by buyer in the payment of any indebtedness secured by the trust agreement or in the performance of any other agreement required in that document. Additionally, and specifically with respect to a default in the obligation to pay taxes, seller had the right under the trust agreement to elect to pay the taxes herself and to add that amount to the balance due under the note. Payment of an amount equal to the overdue taxes then would be due and payable immediately without notice and, at seller's option, buyer's failure to pay immediately could itself be considered a default and would be grounds for accelerating the entire balance due under the note.

Virtually from the outset, buyer established a pattern of late installment payments. Seller sent buyer several letters over the years complaining about the practice, but continued to accept the late payments. Buyer also neglected to pay taxes on the property for the years 1990, 1991, 1992, and 1993 and, obviously, could not have sent seller receipts for the payment of taxes for any of those years, as required under the trust agreement.

On January 28, 1994, seller sent a letter to buyer notifying buyer that she was in arrears on the installment payments and in the payment of taxes, both arrearages constituting defaults under the trust agreement, and declaring that all principal and interest payments due and owing under the note, as well as the delinquent taxes, must be paid by March 1, 1994, or she would commence foreclosure proceedings. Seller sent the letter by both certified and regular mail to buyer at a post office box in Silver Lake, near where the property was located. It is undisputed that buyer never received that letter.

Seller contacted a lawyer in Lake County to represent her in the foreclosure action. In April 1994, she met with

a lawyer there, who advised her to pay the back taxes on the property. She made a partial payment at that time. Seller filed a complaint for judicial foreclosure on May 16, 1994, alleging default in the payment of installments on the note. On May 23, 1994, seller amended the complaint to include an allegation of default in the nonpayment of taxes. Seller made an additional payment on the taxes on May 25, 1994, which brought the taxes current.

Meanwhile, buyer sent four installment payments to the escrow agent in April and early May 1994 and actually brought the account current on May 9, 1994, a few days before the original complaint was filed. Seller had not notified the escrow agent that she had declared buyer in default or directed the escrow agent to stop accepting installment payments.[1] The escrow agent promptly negotiated buyer's checks, subtracted its fees, and forwarded the balance to seller. For her part, seller did *not* negotiate immediately the checks that she received from the escrow agent. Instead, she sent them to her lawyer, who held them until approximately a month after the complaint was served on buyer, and then returned them to seller with instructions that she safely could cash them. Seller then cashed those checks.

Buyer also eventually sent a payment for the tax arrearage to the tax assessor, but not until about two months after being served with the complaint. The tax assessor informed buyer that seller already had brought the taxes current and asked her what to do with the excess payment. At buyer's direction, the assessor issued a refund check to seller, which seller then cashed.

At the conclusion of the trial in the matter, the trial court held, simply, that, "[b]y accepting payments after the

---

[1] Seller suggested in her brief before the Court of Appeals that she did, indeed, attempt to cancel the escrow account, albeit not until after the account was brought current by buyer. She also suggested that the she did not have authority under the escrow agreement to cancel the escrow account for any reason other than default in the payment of installments under the trust agreement. However, neither of the foregoing propositions is supported by any documentation in the record. Because seller did not designate any of the trial court exhibits as part of the record on appeal (as it was her obligation to do) or attach pertinent documents to any of her appellate briefs, any factual arguments that rely on documentary support must be resolved against her.

notice of foreclosure, [seller] waived her right to foreclose." It also denied buyer's request for an award of attorney fees, which she claimed were due her as the prevailing party. Buyer appealed on the attorney fees issue, and seller cross-appealed, assigning as error the trial court's failure to order foreclosure under the trust agreement.

The Court of Appeals held that seller had waived the "time is of the essence" clause with regard to buyer's obligation to make timely installment payments on the note by accepting late payments over the years and, therefore, was obligated to give buyer a reasonable time to cure the default. *Alderman*, 146 Or App at 286. That court held that seller's January 28, 1994, letter to buyer was ineffective under the circumstances to declare a default and accelerate the balance due. *Ibid.* The court further held, however, that the seller's acceptance of late installment payments did *not* constitute a waiver of the requirement that buyer make timely *tax* payments, because seller never accepted late installment payments with knowledge of that other default. *Id.* at 289. The court held that the trust agreement treats the timely payment of installments under the note and the payment of taxes as distinct obligations, to each of which the "time is of the essence" provision applies separately. According to the Court of Appeals, seller never waived the time-essence provision as to the obligation to pay taxes promptly and, therefore, she had the right to initiate the foreclosure action when she did. *Id.* at 289-90.

■　　　It is axiomatic that waiver is the voluntary relinquishment of a known right. As the court stated as long ago as *Mitchell v. Hughes*, 80 Or 574, 580-81, 157 P 965 (1916),

> " 'Waiver involves both knowledge and intention; an estoppel may arise when there is no intention to mislead. Waiver depends upon what one himself intends to do; estoppel depends upon what he caused his adversary to do[.]' In other words, waiver is a voluntary act or declaration, whereby the waiver surrenders some privilege or right."

(Citation omitted.) It follows that, as the Court of Appeals correctly held, waiver of the right to enforce one provision of a contract does not automatically waive the right to enforce another. Only if the waiver intends such a consequence will a

court conclude that the right to enforce the second provision is waived.

In this case, seller clearly waived the right to require the prompt payment of installments under the note by her repeated acceptance of late installment payments. Her conduct demonstrated an intention to waive. Moreover, seller is estopped from enforcing her right to prompt payments because buyer reasonably relied, to her detriment, on seller's failure to enforce the time-essence clause with regard to that obligation. In order to reinstate that clause with respect to buyer's obligation to make timely installment payments, seller was required to give buyer notice of her intention to insist on strict compliance with the terms of the contract in the future, and to allow a reasonable opportunity to cure past delinquencies. *Soltis v. Liles*, 275 Or 537, 542, 551 P2d 1297 (1976); *Fisher v. Tiffin*, 275 Or 437, 440, 551 P2d 1061 (1976). Seller did not do that and, therefore, she is precluded from declaring a default based on late payment of installments under the note.

Whether seller also lost her right to foreclose, based on buyer's failure to pay *taxes* timely, is a separate question. Seller waived that right if, by accepting late installment payments, she intended to waive that other default. Furthermore, and even if she did not so intend, seller would be estopped if buyer was induced thereby into reasonably believing that strict compliance with the timely tax payment obligation was not necessary. Conduct on the part of the seller that is inconsistent with her exercise of the right to insist on strict performance would be pertinent to both inquiries.

Before the Court of Appeals and the trial court, buyer relied on the fact that seller accepted four late installment payments *after* she wrote the January 1994 letter to buyer purporting to invoke her right to accelerate and foreclose based, in part, on the nonpayment of taxes, and *before* she filed the foreclosure action in May 1994. Buyer argued that such acceptance demonstrates seller's intent to waive the "time is of the essence" provision with respect to the buyer's obligation to pay the taxes. As noted, the trial court

accepted that argument. The Court of Appeals disagreed, holding, without explanation, that,

> "so far as the record shows, [seller] did not know of [buyer's] failure to pay taxes when she accepted late payments. After learning of that default, [seller] did not accept any further payments until after she filed this lawsuit, in which she formally accelerated the full amount owed. She did not act inconsistently with her right to foreclose."

*Alderman*, 146 Or App at 289. We do not agree with the legal conclusions that the Court of Appeals drew from the undisputed facts of this case in order to reach that result.

■ As a preliminary matter, it is undisputed that the escrow agent accepted four installment payments on seller's behalf between the time of the purported notice of default, in which seller plainly acknowledged her awareness of buyer's nonpayment of taxes, and the filing of the complaint for judicial foreclosure. It is a fundamental tenet of agency law that payment to an agent authorized to receive it is payment to the principal. *U.S. Pipe v. Northwestern Agencies*, 284 Or 167, 171, 585 P2d 691 (1978); *Schmidt et ux. v. Fitzsimmons et ux.*, 190 Or 415, 420-21, 226 P2d 304 (1951). Therefore, as a matter of law, acceptance by the escrow agent (who was seller's agent) of buyer's checks in April and May 1994 amounted to seller's acceptance of those payments at a time when she had knowledge of the default. That is true regardless of when, or even whether, seller cashed the checks she received from the escrow agent.

■ We are, however, unwilling to hold that seller's acceptance through her agent of four checks in April and May 1994, standing alone, demonstrates her intent to waive the "time is of the essence" provision with respect to buyer's obligation to pay the taxes promptly, or otherwise amounted to conduct inconsistent with her right to enforce that obligation. After sending the default letter, seller immediately began the process of hiring a lawyer to handle the foreclosure action. Moreover, a three-month delay in filing the complaint for judicial foreclosure in the circumstances of this case—where seller lives several hours' drive from the area where the property is located—does not seem unreasonable.

■ Nor can we conclude that seller is estopped from insisting on the prompt payment of taxes simply by virtue of her acceptance of the late installment payments during that three-month period. It is undisputed that buyer never received seller's January 1994 letter declaring a default for nonpayment of taxes. She therefore was unaware of seller's heightened concern about the delinquent taxes. Under the circumstances, buyer was not somehow lulled into a false sense of security regarding seller's failure to enforce the timely tax payment obligation when the escrow agent cashed her installment checks in April and May 1994.

■ ■ Nevertheless, we are persuaded that seller did, by her conduct over the years, waive the "time is of the essence" provision in the trust agreement as it applies to buyer's obligation to pay the taxes promptly when due and, further, that seller is estopped from declaring a default on that basis without providing buyer with both notice of her intention to insist on strict compliance with the terms of the contract in the future and a reasonable opportunity to cure the delinquency. The clause in the trust agreement requiring buyer to pay the taxes on the property also requires buyer "promptly [to] deliver receipts therefor" to seller. It is undisputed that buyer never paid the taxes on the property for the years 1990, 1991, 1992, and 1993. It follows that buyer did not—because she could not—deliver any tax receipts to seller during that time.

The only conceivable purpose behind a clause requiring buyer to deliver tax receipts to seller is to notify seller that the taxes have been paid. Because seller did not receive tax receipts from as early as 1990, she had (at least) constructive knowledge of the nonpayment, dating from that year and continuing until January 28, 1994, at which time she demonstrated actual knowledge of the default. During that entire four-year period, seller accepted late installment payments from buyer with hardly a complaint. That conduct collectively is inconsistent with seller's insistence on strict performance of the terms of the trust agreement and constitutes waiver of her right to foreclose on the basis of nonpayment of taxes. Moreover, because buyer reasonably relied to her detriment on seller's inaction over the years, seller now is estopped from foreclosing on the basis of that default without

first giving buyer notice and a reasonable opportunity to cure.

The decision of the Court of Appeals is affirmed in part and reversed in part. The case if remanded to the Court of Appeals to consider defendants' appeal.