Argued and submitted October 23, 1997, affirmed June 17, 1998

KMT ENTERPRISES, INC.,
an Oregon corporation,
*Respondent,*

*v.*

Donald R. NYSSEN
and Marsha R. Nyssen,
*Appellants,*

*and*

MIGRANT AND INDIAN COALITION FOR
COORDINATED CHILDCARE,
an Oregon nonprofit corporation,
*Defendant.*

(C95 0708 CV; CA A94419)

959 P2d 640

Barton C. Bobbitt argued the cause for appellants. With him on the briefs was Duncan Honn, P.C.

Michael J. Morris argued the cause for respondent. With him on the brief was Bennett, Hartman, Reynolds & Wiser.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.**

LANDAU, P. J.

---

* Deits, C. J., *vice* Rossman, S. J.
** Wollheim, J., *vice* Leeson, J., resigned.

## LANDAU, P. J.

Defendants Donald and Marsha Nyssen own a commercial building that is specially suited for a child care facility. In 1989, the Nyssens leased the building to plaintiff KMT Enterprises, Inc. (KMT) for a five-year term. In early 1993, KMT began negotiating a sublease and sale of business assets to the Migrant and Indian Coalition for Coordinated Childcare (MIC). MIC required a ten-year sublease, which was longer than the term left on KMT's lease with the Nyssens.

KMT renegotiated its lease with the Nyssens. The new lease was for an additional eight years, with payments of $4,000 per month to be credited against a purchase option that could be exercised at the end of the term. The new lease authorized the Nyssens to terminate upon ten days' written notice in the event of any default by KMT.

Armed with a longer lease, KMT then subleased the building to MIC for ten years at $5,500 per month for the first 20 months and $4,500 per month thereafter. The sublease obligated KMT to maintain the roof of the building in good order and repair. It also required MIC to clean leaves and debris from the roof, gutters and downspouts, so that water would not accumulate.

In January 1995, MIC complained to KMT that the building's roof leaked. KMT's president, M. Duane Taylor, inspected the roof and discovered that the drains were plugged with debris. He cleaned out the drains, made some minor repairs and eventually hired a roofer to complete repairs. MIC, however, was unsatisfied with the roof repairs and contacted the Nyssens directly to complain. The Nyssens responded by sending a notice of default to KMT on May 5, 1995. The notice gave KMT ten days to repair the roof or face termination of the lease. Meanwhile, the Nyssens began negotiating with MIC to repair the roof themselves and collect lease payments directly from MIC.

KMT sent a letter to the Nyssens claiming that it would repair the roof but required some additional time. On May 23, 1995, the Nyssens declared the lease in default and

demanded that KMT quit the premises. On June 1, 1995, however, KMT sent the Nyssens the regular $4,000 payment for that month, and the Nyssens cashed the check.

On June 15, 1995, the Nyssens sent a letter to KMT declaring the lease and the sublease terminated effective June 16. The Nyssens then entered into a separate agreement with MIC, requiring monthly payments of $4,000 paid directly to the Nyssens. The Nyssens repaired the roof, at a cost of $21,360. On June 26, 1995, the Nyssens again informed KMT that the lease had been terminated, that the locks had been changed and that further entry by KMT would be treated as a trespass.

On July 7, 1995, KMT initiated this action against the Nyssens for interference with contract and for an injunction preventing the Nyssens from forfeiting KMT's interest in the lease and option to purchase. KMT moved for summary judgment on the claim for injunctive relief, on the ground that the Nyssens waived any right to terminate for breach of the lease in June 1995, because the Nyssens already had accepted rent for that period after notice of KMT's alleged breach. The trial court granted the motion. At that point, MIC began making its $5,500 payments on the sublease; $1,500 was paid to KMT, and the balance was paid to the court for the benefit of the Nyssens.

The Nyssens then sent a letter to KMT terminating the lease for failure to repair the roof, this time reciting that the ten-day notice of default was given in May 1995, not June. That same day, the Nyssens sent another notice of default, declaring that KMT was in breach of the lease for failing to reimburse them for the cost of repairing the roof. KMT responded by filing an amended complaint seeking an order enjoining the Nyssens from forfeiting the lease or instituting forcible entry and detainer proceedings. The Nyssens counterclaimed, seeking an injunction terminating the lease and a judgment for the costs of repairing the roof.

After a bench trial, the court ruled that the Nyssens could not terminate the lease for KMT's failure to repair the roof and that KMT had not breached the lease by failing to make lease payments from July 1995 through February 1996 and by failing to reimburse defendants for repairing the roof.

The court held that KMT was not obligated to make payments, because the Nyssens had repudiated the lease. It held that KMT was not obligated under the lease to reimburse the Nyssens for repairing the roof, because no provision in the lease imposed that obligation on KMT. The court also ruled, however, that the Nyssens were entitled to reimbursement for the $21,360 in repair costs on a theory of unjust enrichment. The court also awarded costs and attorney fees to KMT.

On appeal, the Nyssens assert four assignments of error: (1) The trial court erred in granting KMT's motion for summary judgment; (2) the court erred in ruling that KMT did not breach the lease by failing to make payments from July 1995 through February 1996; (3) the trial court erred in ruling at trial that KMT did not breach the lease by failing to reimburse them for the costs of repairing the roof; and (4) the trial court erred in awarding attorney fees to KMT.

We begin with the trial court's summary judgment ruling. According to the Nyssens, the trial court incorrectly ruled that, by accepting the June 1995 monthly payment after notice of the alleged breach, they waived the right to terminate the lease during that month. KMT responds that the trial court's decision is correct under our decision in *Smith v. Hickey*, 45 Or App 139, 607 P2d 787 (1980). We agree with KMT.

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. In this case, there is no dispute as to the relevant facts. The only question is whether, as a matter of law, the Nyssens waived the right to terminate by accepting KMT's June 1995 payment with knowledge of the alleged breach.

In *Smith*, the plaintiff leased property from the defendant with an option to purchase. The lease agreement obligated the plaintiff to pay real property taxes on the property. When the plaintiff failed to do that, the defendant declared the plaintiff in default. The plaintiff continued making monthly payments on the lease, however, and the defendant continued to accept the payments. When the plaintiff attempted to exercise the option to purchase, the defendant

resisted, and the plaintiff initiated a suit for specific performance. The trial court held in favor of the defendant, finding that the lease had been breached by the plaintiff's failure to pay real property taxes. We reversed:

> "Nonpayment of taxes was grounds for termination of the lease agreement by defendant. When defendant learned of the nonpayment of taxes, he had an election either to terminate the lease on account of the breach or to waive his right to terminate and continue the agreement in full force. This principle is stated in 5 Williston, Contracts, § 687, 292 (3d Ed 1961):
>
>> " 'The commonest case of election in the law of contracts arises where, with knowledge of a breach of condition or a defense excusing performance, a promisor either refuses or continues to accept performance from the other party. As the only theory upon which the benefit of such performance can be rightly received is on the assumption of an election to continue the contract, that assumption is made if the injured party accepts further performance. [Citations omitted.]
>>
>> " 'This principle was early established in the law of landlord and tenant. Acceptance of rent accruing after breach of condition with knowledge of the breach is a discharge of the breach.' [Citations omitted.]"

*Smith*, 45 Or App at 142-43.

■    So also in this case. The Nyssens gave KMT notice of default and of their intent to terminate on May 5, 1995, and again on May 23, 1995. Under the terms of the lease, if KMT failed to repair the roof within ten days, the Nyssens were authorized to terminate the lease. KMT, however, continued making lease payments, and the Nyssens accepted the money. As in *Smith*, the Nyssens could continue to accept payments only on the assumption that they intended to elect to continue the lease in spite of the breach. The trial court did not err in granting KMT's summary judgment motion.

■    We next address the Nyssens' contention that the court erred in concluding after trial that KMT did not breach the lease by failing to make payments from July 1995 through February 1996. According to the Nyssens, the trial court's ruling is at odds with our decision in *Hendrickson v.*

*Carson,* 69 Or App 482, 686 P2d 1066, *rev dismissed* 298 Or 428 (1984), which they read to require a lessee to continue making lease payments during litigation, even after the lessor has repudiated the lease. KMT contends that *Hendrickson* involved a lessee that retained possession during the pendency of the litigation and is therefore distinguishable. We agree with KMT.

■    In reviewing the trial court's decision after a trial without a jury, we accept the court's findings of fact that are supported by any evidence. In this case, there is no dispute as to the relevant facts. The sole dispute is whether the trial court correctly ruled, as a matter of law, that the Nyssens' repudiation of the lease excused KMT's failure to continue making payments.

■ ■    As a general rule, when repudiation of a lease has occurred, the lessee is no longer obligated to tender payments. As the Supreme Court explained in *Davidson v. Wyatt,* 289 Or 47, 61, 609 P2d 1298 (1980) (quoting 4 *Pomeroy's Equity Jurisprudence* § 1047a (5th ed 1941)): " '[A]n actual tender by the plaintiff is unnecessary when, from the acts of the defendant or from the situation of the property [the tender] would be wholly nugatory.' " *See also Temple Enterprises v. Combs,* 164 Or 133, 154-55, 100 P2d 613 (1940). In this case, there is no question that the Nyssens repudiated the lease by repeatedly sending letters declaring the lease terminated, by changing the locks on the building and by threatening the initiation of a trespass action if KMT entered the premises.

There remains the question whether our opinion in *Hendrickson* is to the contrary. In that case, the defendants leased a building from the plaintiff. The defendants were obligated to keep the roof in good repair. When the defendants failed to do so, the plaintiff sent a notice of default. When the defendants failed to take further action, the plaintiff exercised her right to terminate the lease. The defendants subsequently tendered their rent, but the plaintiff refused to accept it. The defendants thereafter did not tender additional rent payments. The plaintiff initiated an action for possession of the premises, arguing that, among other things, the defendants' failure to continue to make payments constituted

a breach of the lease, justifying termination. The trial court rejected the argument, citing the common-law rule that the law does not require a person to perform a useless act. We reversed, explaining that "[w]e do not agree that that 'rule' excuses a tenant in possession of commercial premises from tendering rent." *Id.* at 485.

Our decision in *Hendrickson* thus was premised on the fact that the defendants were in possession, and that fact drove our conclusion that, notwithstanding the repudiation of the lease by the plaintiff, the defendants were obligated to continue making payments during the pendency of the litigation. In this case, KMT did not remain in possession and, in fact, was cautioned not to enter the premises on threat of legal action. *Hendrickson* does not apply, and the trial court therefore did not err in concluding that KMT's failure to make lease payments from July 1995 through February 1996 did not constitute a breach of the lease.

■ We turn to the Nyssens's contention that the trial court erred in concluding that KMT did not breach the lease by failing to reimburse them for the costs of repairing the roof. They argue that, because the lease required KMT to keep the roof in good repair, it should be obligated to reimburse them when they undertake the repairs themselves. KMT argues that the lease simply does not impose an obligation to reimburse for repairs that it did not make. We agree with KMT.

The lease certainly obligated KMT to keep the roof in good repair. It did not, however, contain any provision requiring KMT to reimburse the Nyssens for repairs that they undertook on their own and did not include as a ground for termination KMT's failure to make such payments. The parties certainly could have included a provision in the lease imposing that obligation. Such a provision is not unusual. *See, e.g.*, Thomas R. Page, *Form 6: Commercial Lease* § 5.4, *in* Documentation of Real Estate Transactions (OSB 1992). The parties in this case, however, did not include one in their lease. The trial court did not err in concluding that KMT's failure to reimburse the Nyssens for the costs of the roof repair did not constitute a breach of the lease.

■ Finally, we address the trial court's award of attorney fees to KMT as the prevailing party. According to the

Nyssens, they should be regarded as the prevailing party, because they obtained a money judgment in the amount of $21,360. KMT argues that the trial court correctly concluded that, because KMT prevailed on its equitable claims, which entitled it to retain its interest in an eight-year lease with a purchase option worth far in excess of $21,360, KMT was entitled to fees. We agree, without further discussion, that KMT is correct.

Affirmed.