Argued and submitted June 24, on respondent's motion to dismiss filed June 23, appellant's response to respondent's motion to dismiss filed July 7, and respondent's reply in support of respondent's motion to dismiss filed July 14, motion to dismiss denied; affirmed October 26, 2011

## C & K MARKET, INC.,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

## Giorgio ROCCASALVA,
an individual,
*Defendant-Respondent.*

Deschutes County Circuit Court
EV100082; A145200

265 P3d 81

David W. Melville argued the cause for appellant. With him on the briefs were J. Matthew Donohue, Law Offices of David Melville, and Markowitz, Herbold, Glade & Mehlhaf, P.C.

John E. Laherty argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

In this commercial forcible entry and detainer (FED) action, the issue is whether, by continuing to accept a tenant's rental payments made pursuant to a lease agreement that had been terminated by a landlord because of the tenant's breach, the landlord elected to continue the lease notwithstanding the breach. Our resolution of that issue—raised in plaintiff's first assignment of error—obviates the need to address plaintiff's other assignments of error regarding the award of attorney fees to defendant. For the reasons below, we affirm.

The relevant facts are not in dispute. In 2006, plaintiff and defendant entered into a lease agreement under which defendant leased space to operate a liquor store in a grocery store owned by plaintiff. Under the lease, defendant is required to make a monthly payment to plaintiff essentially comprised of two components: base rent for the use of the space in the grocery store and equipment rent, *viz.*, an amount assessed by plaintiff to reimburse it for the costs that it had incurred in installing the equipment and fixtures for the liquor store. Further, the lease provides that, if defendant fails to remedy within 10 days of receiving notice from plaintiff any default in paying his monthly rent obligations, then plaintiff has the right to terminate the lease and pursue the appropriate remedies for defendant's breach.

In October 2007, plaintiff realized that, despite defendant's consistent timely payment of his base rent, he had not paid the equipment rent during his tenancy. Plaintiff began to invoice defendant for the past-due equipment rent and continued to do so for a period of time to no avail, but, because the value of having the liquor store in its grocery store outweighed the costs of terminating the lease, plaintiff decided not to exercise its right to terminate the lease. However, when plaintiff realized that defendant had no intention of paying the equipment rent—and after defendant had threatened to relocate the liquor store to a competitor's grocery store—plaintiff sent defendant a letter in November 2009 stating that it would terminate the lease on December 1 if defendant did not pay by that date the full amount of accrued equipment rent that he owed. Defendant did not pay

the equipment rent as plaintiff demanded; however, he continued to pay his base rent for December 2009 and January 2010—payments that plaintiff accepted—and he continued to operate the liquor store.

As a result of plaintiff's termination of the lease, it filed this FED action on January 26, 2010, to eject defendant from the premises. Defendant answered and asserted an affirmative defense that, by accepting his December and January base rent payments, plaintiff had waived its right to terminate the lease and, therefore, was not entitled to possession of the leased premises. The case was tried to the court, and the court agreed with defendant's affirmative defense, reasoning that, under *KMT Enterprises, Inc. v. Nyssen*, 154 Or App 477, 959 P2d 640 (1998), "[o]nce [a] landlord becomes aware of the breach [of the lease] and accepts rent thereafter, it is an election to proceed with the [lease] * * * in spite of the breach." Accordingly, the court entered a judgment in defendant's favor, which plaintiff appeals.[1]

---

[1] After plaintiff appealed the court's judgment, it informed defendant that it would not accept any base or equipment rent payments during the pendency of the appeal. However, in February 2011, after rejecting defendant's base rent checks throughout the previous year, plaintiff unexpectedly began accepting defendant's payments, including checks in April and May that defendant specifically indicated were intended to cover the equipment rent for October to December 2006—that is, for a portion of the period for which he had failed to pay that rent.

Defendant then filed a motion to dismiss this appeal, arguing that, under ORS 91.090, "[a] landlord's acceptance of rent during the pendency of an appeal from an eviction action for nonpayment of rent constitutes a reinstatement of the rental agreement" and, as a result of the reinstatement, that plaintiff could not maintain its appeal of the FED judgment.

ORS 91.090 provides, as relevant:

"The failure of a tenant to pay the rent reserved by the terms of the lease for the period of 10 days, unless a different period is stipulated in the lease, after it becomes due and payable, operates to terminate the tenancy. * * * [H]owever, if the landlord, after such default in payment of rent, accepts payment thereof, the lease is reinstated for the full period fixed by its terms, subject to termination by subsequent defaults in payment of rent."

The statute operates to reinstate a lease only when the landlord accepts payment of the entirety of the rent that the tenant has failed to pay. *Reeves v. Baker*, 270 Or 837, 840, 530 P2d 30 (1974) ("[W]hen [the] plaintiffs after default in payment of the rent accept payment of the rent *upon which their action is predicated*, the lease was 'reinstated' [under ORS 91.090] subject to termination [for] subsequent defaults in payment of rent." (Emphasis added.)); *see also Clackamas Town Center v. Jandel Foods, Inc.*, 88 Or App 72, 74, 744 P2d 280 (1987) (dismissing the landlord's appeal of a judgment denying eviction under the principle from *Reeves* that "[a] landlord waives an alleged breach of the lease by accepting rent *for the period in question*" (emphasis added)).

If a party to a contract materially fails to perform under the contract, then the other contracting party must choose either to continue or to refuse to accept performance from the breaching party. *Smith v. Hickey*, 45 Or App 139, 142-43, 607 P2d 787 (1980). As explained in the *Restatement (Second) of Contracts* § 246(1) (1981),

> "an obligor's acceptance or his retention for an unreasonable time of the obligee's performance, with knowledge of or reason to know of the non-occurrence of a condition of the obligor's duty, operates as a promise to perform in spite of that non-occurrence[.]"

In the context of a lease agreement, when a landlord learns that a tenant has breached the lease in such a way that provides the landlord with a basis to terminate the lease, the landlord must not accept performance of lease obligations by the tenant if the landlord wishes to terminate the lease for the breach. *See Smith*, 45 Or App at 143 ("Acceptance of rent accruing after breach of condition with knowledge of the breach is a discharge of the breach." (Internal quotation marks omitted.)).

For example, in *KMT Enterprises*, the defendants rented a commercial building to the plaintiff, who subsequently sublet the property to a third party. 154 Or App at 479. The lease between the defendants and the plaintiff authorized the defendants to terminate the lease—after giving the plaintiff notice—if the plaintiff defaulted, and the sublease between the plaintiff and the third party imposed on the plaintiff an obligation to maintain the roof of the building. The plaintiff did not fulfill its obligation to maintain the roof, and, as a result, the defendants declared on May 23, 1995, that the plaintiff was in default. On June 1, the plaintiff sent the defendants its rent payment for that month, which the defendants accepted, but the defendants nonetheless terminated the lease on June 16.

The plaintiff brought an action seeking, among other things, an injunction preventing the defendants from

---

Here, plaintiff did not accept payment of the entirety of defendant's outstanding equipment rent and, therefore, did not reinstate the lease under ORS 91.090. Accordingly, we deny defendant's motion to dismiss the appeal.

forfeiting the plaintiff's interest in the lease and moved for summary judgment on the injunction claim on the ground that the defendants had waived their right to terminate the lease in June by accepting rent for that month with knowledge of the plaintiff's alleged breach, and the trial court agreed. On appeal, the defendants argued, in part, that the trial court had erred in granting summary judgment for the plaintiff.

We agreed with the trial court's resolution of that issue, concluding that the defendants "could continue to accept payments only on the assumption that they intended to elect to continue the lease in spite of the [plaintiff's] breach." *Id.* at 482. The defendants' acceptance of the plaintiff's performance—*viz.*, the payment of rent—was legally incompatible with their attempt to terminate the lease. Their duty to perform their obligations under the lease for the month of June was triggered by their acceptance of the rent, and, therefore, the defendants had elected to continue the lease through June despite the plaintiff's breach.

Here, because defendant had not paid its equipment rent and, therefore, had failed to fulfill a duty imposed on him by the lease, plaintiff terminated the lease on December 1, 2009; however, despite defendant's breach, plaintiff accepted defendant's base rent payments for December 2009 and January 2010. Plaintiff's acceptance of those rent payments—like that of the defendants in *KMT Enterprises*—was legally incompatible with its purported termination of the lease in December.[2] By accepting defendant's base rent payments, plaintiff elected to continue the lease notwithstanding defendant's breach of his obligation to pay equipment rent.[3]

---

[2] Importantly, acceptance of defective performance does not prevent a party from seeking damages for that breach of the contract. Richard A. Lord, 14 *Williston on Contracts* § 43:15, at 629 (4th ed 2000).

[3] The Supreme Court's decision in *Alderman v. Davidson*, 326 Or 508, 954 P2d 779 (1998), does not compel a contrary result, notwithstanding plaintiff's insistence that it does. The issue in *Alderman* was whether, by repeatedly accepting late principal payments despite a "time is of the essence" provision in their agreement, a seller of real property had waived her right to insist that the buyer timely pay property taxes. In resolving that issue, the court concluded that "waiver of the right to enforce one provision of a contract does not automatically waive the right to enforce another." *Id.* at 513. *Alderman* is distinguishable from this case because (1) it involved a seller's right to foreclose on property under a promissory note, rather than a party's right to terminate a contract, and (2) the seller, apparently having already transferred the property to the buyer, no longer had an outstanding

Accordingly, the trial court correctly entered a judgment in defendant's favor because, notwithstanding its purported termination of the lease, plaintiff had continued the lease in effect by accepting defendant's base rent payments, and, hence, plaintiff was not entitled to possession of the leased premises when it filed its FED action.

Motion to dismiss denied; affirmed.

---

duty to perform under the promissory note that could be affected by her acceptance of the late principal payments.