# BURNAM,
*Appellant,*

*v.*

# GARON DEVELOPMENT CORPORATION et al,
*Respondents.*

(41-188; CA A30621)

690 P2d 1090

Elden M. Rosenthal, Portland, argued the cause for appellant. With him on the briefs was Rosenthal & Greene, P.C., Portland.

Frederic P. Roehr, III, Portland, argued the cause for respondents Garon Development Corporation and Leisure Resources, Inc. With him on the brief were Thomas Sauberli, and Vergeer, Roehr & Sweek, Portland.

Robert D. Newell, and Black, Tremaine, Lankton, Krieger & Schmeer, Portland, attorneys for respondent Dale Industries, Inc., joined in the brief of respondents Garon Development and Leisure Resources, Inc.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff appeals from a judgment entered after a jury verdict finding defendants not liable in this action for trespass and negligence. She assigns as errors the trial court's striking her cause of action in trespass for damage to real property and its striking several allegations of negligence in her cause of action for personal injury and damage to personal property.

■ Before addressing the merits of this appeal, we deal with defendants' assertion that it should be dismissed as not timely under ORS 19.026(1), which requires a notice of appeal to be filed within 30 days of the entry of the judgment appealed from. A judgment was entered in this case on May 7, 1982, the same date on which the jury returned its verdict. Plaintiff's appeal from that judgment was dismissed by this court on October 5, 1983, because that judgment was not final for it did not dispose of a cross-claim between defendants. *Burnam v. Garon Development Corp.,* 64 Or App 847, 669 P2d 1186 (1983). Before we dismissed that appeal, defendants entered into a stipulation on January 19, 1983, that the cross-claim be dismissed. After our dismissal of plaintiff's first appeal, the trial court entered a final judgment on December 16, 1983, dismissing the cross-claim. Plaintiff filed her notice of appeal from that judgment on January 6, 1984.

Defendants contend that the 30 day period in which to file a notice of appeal commenced on January 19, 1983, when they entered into the stipulated judgment to dismiss the cross-claim. We disagree. Once plaintiff filed her first notice of appeal in June, 1982, the trial court was deprived of jurisdiction to enter a judgment on the stipulation under ORS 19.033(1). *State v. Jackson,* 228 Or 371, 365 P2d 294 (1961); *Fernleaf v. Publishers Paper Co.,* 61 Or App 439, 657 P2d 723 (1983). The final judgment from which plaintiff appeals was entered on December 16, 1983, when the trial court reacquired jurisdiction after we dismissed the appeal. Her notice of appeal was timely filed on January 6, 1984.

Turning to the merits, plaintiff and her husband leased a parcel of approximately 41 acres on a month-to-month basis under an oral lease in 1976. Defendant Leisure Resources, Inc. (Leisure), purchased the property in December, 1976, at which time plaintiff began paying rent to Leisure on a quarterly basis, under the same agreement as

with the previous lessor. Plaintiff grazed cattle on the property, which was encircled by two fences: a wire and wood outer fence and an electrified one set in from the other.

The adjoining property was owned by Garon Development Corp. (Garon), whose sole shareholder and president, Gary Nerison, is also the 50 percent owner and president of Leisure. Garon was improving that parcel as residential lots. In November or December, 1979, Dale Industries, Inc. (Dale), the contractor for that development, pursuant to instructions from Garon, dug a drainage ditch four feet wide and three feet deep which extended 90 feet onto plaintiff's property. Dale took down parts of the two fences to dig the ditch; the testimony is conflicting as to whether those fences were restored. At no time did any of the defendants inform plaintiff about the digging of this ditch.

Plaintiff testified that on December 7, 1979, she was alerted by a warning system that there was a short in the electric fence. As she rode her motorcycle around the perimeter of the fence to discover where the break was, she ran into the ditch. She brought this action to recover for her injuries and for damage to the land and fences.

Plaintiff's first cause of action states a claim in trespass against Dale and Garon for damage to the real property and fences. Her second cause of action states claims in negligence against all defendants to recover for her personal injury and damage to the motorcycle. The complaint reads, in pertinent part:

"The plaintiff now appears and alleges as her First Cause of Action:

"* * * * *

"That on or about December 7, 1979, defendants, Dale's Sand & Gravel Co. and Garon Development Corporation, trespassed on plaintiff's above-described real property in that its agents and employees intentionally knocked down plaintiff's fences, and entered upon plaintiff's property, and then and there willfully cut and dug a drainage ditch four feet deep, three feet wide and ninety feet long, then and there damaging said real property in the sum of $25,000, and damaging and depreciating her fence in the sum of $200.

"Plaintiff alleges as Count I of her Second Cause of Action:

"* * * * *

## "VII.

"That the defendants, Garon Development and Dale Industries, and each of them, were negligent in the following respects:

"1.   In failing to warn the plaintiff of the presence of the drainage ditch by means of signs, flags, lights or other reasonable warning devices;

"2.   In digging a ditch onto plaintiff's property without plaintiff's knowledge or permission;

"3.   In digging a drainage ditch across a well-traveled portion and pathway of plaintiff's property.

"* * * * *

"Plaintiff alleges as Count II of her Second Cause of Action:

"* * * * *

## "XIV.

"That defendant, Leisure Resources, was negligent in the following respects:

"1.   In failing to warn the plaintiff of the presence of the above-described drainage ditch by means of signs, flags, lights or other reasonable warning devices when it knew or should have known of the presence and existence of said ditch;

"2.   In failing to inspect said property to determine the existence of said drainage ditch;

"3.   In failing to correct said dangerous condition after he *[sic]* knew or should have known of the presence and existence of said ditch; and

"4.   In allowing said drainage ditch to be dug onto its property after it became aware of the plan to do so."

The trial court, on defendants' motions, struck the first cause of action, the second and third allegations of negligence in count I of the second cause of action, and the second, third and fourth allegations of negligence in Count II of the second cause of action.

■      In her first assignment of error, plaintiff claims that the court erred in striking the first cause of action for trespass. The court found that, because plaintiff was in default in paying rent for the last quarter of 1978 and in paying late the

rent for the last quarter of 1979, she was a tenant at sufferance whose tenancy could be and was terminated without notice when the lessor's agents entered on the land to dig the ditch. We think that plaintiff's tenancy was not properly terminated and that she did state a cause of action in trespass.

It was not disputed that plaintiff was in default in the rental payment for the last quarter of 1978 and that she did not pay rent for the last quarter of 1979 until January, 1980. It was not disputed that Leisure never sent a notice to vacate and continued to accept rental payments through September, 1981, at which time it sent a notice terminating the tenancy.

The following statutes are relevant to the issue of the status of plaintiff's tenancy on December 7, 1979. ORS 91.090 provides:

> "The failure of a tenant to pay the rent reserved by the terms of his lease for the period of 10 days, unless a different period is stipulated in the lease, after it becomes due and payable, operates to terminate his tenancy. No notice to quit or pay the rent is required to render the holding of such tenant thereafter wrongful; however, if the landlord, after such default in payment of rent, accepts payment thereof, the lease is reinstated for the full period fixed by its terms, subject to termination by subsequent defaults in payment of rent."

ORS 91.040 provides:

> "One who comes into possession of the real estate of another lawfully, but who holds over by wrong after the termination of his term, is considered as a tenant at sufferance. No notice is required to terminate a tenancy at sufferance."

The trial court held that plaintiff's month-to-month tenancy automatically terminated with her default, creating a tenancy at sufferance. Decisions of the Supreme Court interpreting ORS 91.090 seem inconsistent as to whether a tenancy automatically terminates on the tenant's failure to pay rent for ten days after it is due or whether the tenant's default simply gives the landlord an option to terminate the tenancy which he must exercise by giving the tenant notice.

In both *Rainey v. Quigley,* 180 Or 554, 178 P2d 148 (1947), and *Ratoza v. The Flame, Inc.,* 277 Or 185, 559 P2d 1283 (1977), the landlord had brought a forcible entry and detainer action to recover possession of leased property. The

tenant had consistently tendered, and the landlord had accepted, payments of rent more than ten days after the payments were due, and the tenant argued that, because of this pattern, the landlord should be estopped from terminating the lease because of the tenant's most recent default. The Supreme Court held in both cases that ORS 91.090 operated automatically to terminate the tenancy upon the tenant's default and that equity could not provide relief from a statutory forfeiture.

In *Falk v. Amsberry*, 279 Or 417, 569 P2d 558 (1977), the tenants sued to recover damages for the landowner's refusal to permit them to harvest a crop growing on land which they had leased.[1] The dispositive issue in the case was whether the oral year-to-year lease had terminated on the tenants' failure to pay the 1972 rent within ten days after it was due or on the later sale of the property. If the lease had terminated on the tenants' default, they would have forfeited their right to emblements. *See Francis v. Schallberger,* 137 Or 529, 3 P2d 530 (1931). The Supreme Court held:

> "* * * [T]he trial court erred in concluding that the plaintiffs' tenancy was terminated by the late payment of rent. * * * This statute [ORS 91.090], in essence, gives the landlord an option to terminate, an option which in this case was never exercised.
>
> "* * * * *
>
> "In the present case, at the time the sale was consummated Larsen had not exercised his option to terminate the lease. Failure to give notice of termination prior to October 1, 1972, had resulted, as we have pointed out, in extension of the lease for another year, subject to earlier termination by a sale of the property and subject to Larsen's right of termination because of default in rent payments. This right was never exercised, and thus the lease terminated when the property was sold." 279 Or at 422.

---

[1] The tenant's right to recover was based on *former* ORS 91.310, currently codified as ORS 91.230, which states:

> "When the leasing or occupation is for the purpose of farming or agriculture, the tenant or person in possession shall, after the termination of the lease or occupancy, have free access to the premises to cultivate and harvest or gather any crop or produce of the soil planted or sown by him before the service of notice to quit."

We think that this case is controlled by the interpretation of ORS 91.090 in *Falk v. Amsberry, supra,* which is the most recent and closely analagous of the three cases. *Falk* holds that a tenant's failure to pay rent timely does not automatically terminate his leasehold, but that a notice of termination is necessary for the landlord properly to terminate the lease on the tenant's default. Although this holding appears to be inconsistent with the two previous cases, they may be reconciled by observing that in both *Ratoza v. The Flame, Inc., supra,* and *Rainey v. Quigley, supra,* the landlord did serve notice of his intent to exercise his right to terminate the tenancy after default by serving the summons and complaint in a forcible entry and detainer action.

In this case, plaintiff's failure to pay the rent for the last quarter of 1978 gave Leisure the right to terminate the tenancy which it did not exercise. Leisure accepted rental payments for periods after this default, which indicates its acquiescence in the continuation of the month-to-month tenancy. In addition, although plaintiff did not make the payment for the last quarter of 1979 until January, 1980, Leisure did not serve notice to terminate the tenancy for that default either. For these reasons, plaintiff's month-to-month tenancy had not terminated on December 7, 1979, and the trial court erred in finding that plaintiff was a tenant at sufferance. As a tenant from month-to-month, plaintiff could maintain an action in trespass against Dale and Garon. The trial court erred in dismissing plaintiff's first cause of action.

■ Plaintiff argues in her second assignment of error that the trial court erred in striking the second allegation of Dale's and Garon's negligence in Count I of her second cause of action. In striking this allegation, the trial court relied on its reasons for striking the first cause of action. The court read this part of the complaint as stating a claim in trespass and ruled that plaintiff could not state such a claim because of her status as a tenant at sufferance. The claim was not for trespass but for negligently causing plaintiff's injuries.

The first two allegations of Count I read as follows:[2]

"That the defendants, Garon Development and Dale

---

[2] Another allegation of negligence was stricken from this count, but no error is assigned to that ruling.

Industries, and each of them, were negligent in the following respects:

"1. In failing to warn the plaintiff of the presence of the drainage ditch by means of signs, flags, lights or other reasonable warning devices;

"2. In digging a ditch onto plaintiff's property without plaintiff's knowledge or permission * * *."

This negligence claim does not allege that defendants were wrongfully on plaintiff's land; therefore, it does not state a claim in trespass. *Hawkins v. Barber,* 263 Or 416, 502 P2d 591 (1972).

■■ The court submitted to the jury the first allegation of this count regarding the defendants' failure to warn plaintiff of the hazard. The first paragraph alleged that defendants were negligent in failing to employ specific means to apprise plaintiff of the existing danger which they created. The second paragraph alleges different and independent negligent omissions which occurred before the digging of the ditch. As a tenant lawfully in possession, plaintiff was entitled to grant or to refuse defendants permission to dig on her property. Had defendants sought her permission to dig or otherwise imparted to her knowledge that they intended to do so, she would have been aware of the existence of the hazard and would thus have been able to avoid it. We view the stricken allegation as alleging another means by which defendants could have warned plaintiff. The court erred in striking it.

■ In her third assignment of error, plaintiff argues that the court erred in striking from Count II of her second cause of action the third and fourth allegations of Leisure's negligence:

"That defendant, Leisure Resources, was negligent in the following respects:

"* * * * *

"3. In failing to correct said dangerous condition after he *[sic]* knew or should have known of the presence and existence of said ditch; and

"4. In allowing said drainage ditch to be dug onto its property after it became aware of the plan to do so."

The court submitted to the jury only the first allegation of negligence concerning Leisure's failure to warn the plaintiff of the danger and struck the others, ruling that "[i]f there is a

case here at all, it really has to be with this warning issue." Although the reason for the court's ruling is not readily apparent from the record, it seems to have been based on one or more of the following grounds: there was no evidence to support these allegations; the acts alleged were not negligent as a matter of law; and these allegations added nothing to the first. We think the court erred.

Both allegations state acts or omissions which are independent of those in the first allegation concerning Leisure's failure to warn and which could have been causal factors in plaintiff's injury. In addition, there is evidence in the record to support the allegations. Because they stated separate negligent acts which were supported by evidence, the trial court erred in striking them.

The rulings of the trial court striking plaintiff's first cause of action, the second allegation of negligence in Count I of the second cause of action and the third and fourth allegations of negligence in Count II of the second cause of action were erroneous.

Reversed and remanded.