Argued and submitted January 5, affirmed September 2, reconsideration denied November 13, petition for review denied December 15, 1987 (304 Or 547)

SHLIM,
*Respondent,*

*v.*

ALIMEG, INC.,
*Appellant.*

SHLIM,
*Respondent,*

*v.*

ALIMEG, INC.,
*Defendant,*

*and*

CML, INC.,
*Appellant.*

(81005; CA A38151)

742 P2d 54

Orrin Leigh Grover, Molalla, argued the cause for appellants. With him on the brief were Michael Mills and Mills & McMillin, Salem.

John H. Heald, Portland, argued the cause for respondent. With him on the brief were Richard L. Grant and Zikes, Kayser, Freed, Smith & Heald, P.C., Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendants Alimeg, Inc. (lessee) and CML, Inc. (sublessee) appeal a judgment for plaintiff (lessor) in this forcible entry and detainer action. We affirm.

In September, 1971, lessee leased premises for use as a nursing home from lessor under a written lease agreement. The monthly rental was $2,550. In April, 1981, lessee sublet the premises to sublessee. Lessor and lessee had modified the lease to increase the monthly rental to $3,600. Lessor, however, continued to accept rent of $2,550 through November, 1984. On December 7, 1984, lessor returned the December rent check to lessee with a letter that stated:

"The court has held after lengthy litigation that the rental due on the lease was modified by agreement of the parties to the sum of $3,600 per month. In addition, the lease requires that the lessee submit with each month's rental payment a pro rata portion of the real property taxes which will next become due. Real property taxes for 1984-85 were $12,524, and since taxes have gone up each year, we can assume that the 1985-86 taxes will be at least $12,500. Accordingly, each monthly payment should include the sum of $1,041.66 as a pro rata portion of the taxes due.

"We are returning the check in the amount of $2,550 which has been received this date apparently for the December rental payment, as it is not the full amount which is due. If this default is not cured within seven days of the date of this correspondence by the payment of the sum of $3,600 as and for the December rental payment, we will institute an action for Forceable Entry and Detainer."

Lessee failed to pay rent or *pro rata* property taxes for the months of December, 1984, and January, 1985. On January 10, 1985, lessor commenced this action.

On January 15, 1985, lessor sent this notice to lessee:

"Gentlemen:

"This will serve as written notice that the lease dated September 2, 1971 * * * is hereby terminated for nonpayment of rent and failure to pay real property taxes. Reference is made to my correspondence of December 7, 1984, which is incorporated by reference herein as though fully set forth."

On January 30, 1985, lessee filed a petition in bankruptcy. The

FED action was temporarily stayed. 11 USC § 362. In May, 1985, the bankruptcy court entered a stipulated order:

> "The Debtor [lessee] has made a motion for the payment of certain administrative expenses. The motion came on specially for hearing on May 6, 1985. After consultation between the interested parties, it is agreed as follows:
>
> "1.   That the payment of administrative rent[1] in the amount of $3600.00 per month for February, March and April, 1985 shall be authorized.
>
> "2.   That the payment of the pro rata portion of the real property taxes for the months of February through April, 1985 in the aggregate amount of $3150.00 is approved."

■    Defendants argue that lessor's acceptance of the administrative rent effected a reinstatement of the lease. ORS 91.090 provides, in part:

> "[I]f the landlord, after [a] default in payment of rent, accepts payment thereof, the lease is reinstated for the full period fixed by its terms, subject to termination by subsequent defaults in payment of rent."

In *Reeves v. Baker,* 270 Or 837, 530 P2d 30 (1974), the tenants tendered into court the rent due plus interest while the landlords' FED action was pending. On the landlords' motion, the trial court disbursed the tendered rent to them during pendancy of the tenants' appeal. The court stated:

> "[W]hen plaintiffs after default in payment of the rent accept payment of the rent *upon which their action is predicated,* the lease was 'reinstated' subject to termination of subsequent defaults in payment of rent." 270 Or at 840. (Emphasis supplied.)

Here, the rent upon which lessor predicates her action was for December, 1984, and January, 1985. Lessor accepted administrative rent for February, March and April, 1985, but that did not waive lessee's default in payment or reinstate the lease under ORS 91.090. *See also Kruse v. Blair et al,* 127 Or 393, 397, 272 P 265 (1928).

■    Defendants next argue that lessor's notices of default and termination were inadequate. They assert that the letter

---

[1] The Bankruptcy Code allows for the payment of expenses, such as rent, which are "the actual, necessary costs and expenses of preserving the estate." 11 USC § 503(b)(1)(A).

of December 7, 1984, was a premature notice of default, because they had a 10-day grace period after December 1, 1984, which had not yet expired. They also assert that the notice of termination of January 15, 1985, was too late, because plaintiff had already commenced the FED action. The lease provides:

"16. *Default.* The following shall be events of default:

"16.1 *Default in Rent.* Failure of Lessee to pay any rent or other charge within ten (10) days after it is due.

"16.2. *Default in Other Covenants.* Failure of Lessee to comply with any term or condition or fulfill any obligation of the lease (other than the payment of rent or other charges) within ten (10) days after written notice by Owner specifying the nature of the default with reasonable particularity. If the default is of such a nature that it cannot be completely remedied within the ten day period, this requirement shall be satisfied if Lessee begins correction of the default within the ten day period and thereafter proceeds with reasonable diligence and in good faith to effect the remedy as soon as practicable.

"\* \* \* \* \*

"17. *Remedies on Default.*

"17.1 *Termination.* In the event of a default the lease may be terminated at the option of Owner by notice in writing to Lessee. Such notice may be included in a notice of failure of compliance given under Section 16.2 in which event the notice shall be effective if the default is not cured within the grace period."

It is of no consequence that the letter of December 7, 1984, was sent before the 10-day grace period in section 16.1 had expired. That section does not require a written notice of default. Moreover, there is no statutory requirement for such notice. *See* ORS 91.090. Section 17.1, however, does require a written notice of termination. The December 7, 1984, letter was sufficient to comply with section 17.1. It contained notice of lessor's intent to institute an FED action if the rent was not paid within the time period specified, which was equivalent to notice of her intent to terminate the lease. *See Burnam v. Garon Development Corp.,* 70 Or App 665, 672, 690 P2d 1090 (1984), *rev dismissed* (1985). Accordingly, it does not matter that the January 15, 1985, notice was sent after lessor had commenced the FED action.

Lessee's argument that the district court should have declined to exercise jurisdiction, because the premises are used as a nursing home, is without merit.

Affirmed.