Submitted September 3, 2015; on appellant's motion for review under ORAP 8.40 filed March 7, and respondent's response to appellant's motion filed March 21, motion for review of order on undertaking allowed; judgments and order on undertaking affirmed September 8; on appellant's petition for reconsideration and reconsideration en banc filed October 1, and respondent's response to appellant's petition for reconsideration filed October 5, reconsideration allowed by opinion December 14, 2016
See 282 Or App 814, 387 P3d 501 (2016)

WILLAMETTE LANDING
APARTMENTS - 89, LLC,
aka Willamette Landing,
*Plaintiff-Respondent,*

*v.*

Boyd BURNETT,
and all others,
*Defendant-Appellant.*

Marion County Circuit Court
11C24969; A152926

382 P3d 512

Courtland Geyer, Judge.

Boyd Burnett and Craig Colby filed the opening and reply briefs for appellant. On the supplemental brief was Boyd Burnett.

Courtney C. Dippel, Bonnie Richardson, and Folawn Alterman & Richardson LLP filed the answering brief for respondent. On the supplemental brief were Courtney C. Dippel, Zach Allen, and Folawn Alterman & Richardson LLP.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**DEVORE, J.**

Defendant first appeals a general judgment that awarded plaintiff, his landlord, possession of the apartment that he rents. Defendant next appeals a supplemental judgment that awarded plaintiff $103,308.43 in attorney fees. Defendant also appeals the order denying his motion for relief from the judgments, based on plaintiff's acceptance of the value of two years' occupancy disbursed from defendant's deposit for an undertaking on appeal. Finally, defendant moves for review of the most recent order on his supersedeas undertaking, which allows plaintiff to receive the value of a third year's occupancy during appeal and which requires defendant to provide for a fourth year a higher deposit than was required for the first two years. We affirm the judgments, allow the motion for review, and affirm the order on the supersedeas undertaking.

## FACTS

We begin with the facts relevant to the general judgment. "Because the jury returned a verdict in plaintiff's favor, we state the facts in the light most favorable to the plaintiff." *Stuart v. Pittman*, 350 Or 410, 413, 255 P3d 482 (2011). In March 2011, defendant rented an apartment at the Willamette Landing apartment complex. The complex is owned by plaintiff, Willamette Landing Apartments - 89, LLC. In July, plaintiff posted a "Notice of Entry" that told defendant that in four days an employee intended to enter the apartment to paint the front door and to inspect the premises. By email, defendant refused consent to entry. In September and October, plaintiff again posted notices that expressed its intent to enter defendant's residence. Each time, defendant wrote plaintiff refusing to allow entry.

In November, plaintiff sent to defendant a "Notice of Termination for Cause" that stated that, due to defendant's refusals to allow entry, defendant was in material noncompliance with the rental agreement and with ORS 90.322.[1] The

---

[1] ORS 90.322 provides, in pertinent part:

"(1) A landlord or, to the extent provided in this section, a landlord's agent may enter into the tenant's dwelling unit or any portion of the premises under the tenant's exclusive control in order to inspect the premises, make necessary or agreed repairs, decorations, alterations or improvements,

parties exchanged further communications, but defendant continued to refuse to allow plaintiff to enter the premises.

Plaintiff filed an eviction complaint that alleged that plaintiff was entitled to possess the apartment based on defendant's unreasonable refusal to permit entry for maintenance. In its caption, the complaint identified the "Plaintiff(s)-(Landlord or agent)" as "WILLAMETTE LANDING." Defendant answered by denying all the substantive allegations, raising three affirmative defenses, and pleading four counterclaims, but defendant did not allege that the complaint was deficient in any way. Defendant's answer identified the "Landlord/Plaintiff" more completely as "WILLAMETTE LANDING - 89, L.L.C."

Several months later, plaintiff filed a motion for leave to amend its complaint to show plaintiff as "Willamette Landing Apartments-89, L. L. C., dba Willamette Landing." Defendant opposed the motion and argued that plaintiff's failure to properly name itself in the original complaint meant that its case should be dismissed. The trial judge initially denied both motions but entertained defendant's motion to reconsider and allowed additional briefing on the issue. Still unpersuaded, the trial court granted leave to amend.

## AMENDMENT

On appeal, defendant relies on ORS 105.130 to challenge the trial court's decision to allow amendment and to

---

supply necessary or agreed services, perform agreed yard maintenance or grounds keeping or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workers or contractors. The right of access of the landlord or landlord's agent is limited as follows:

"* * * * *

"(f) In all other cases, unless there is an agreement between the landlord and the tenant to the contrary regarding a specific entry, the landlord shall give the tenant at least 24 hours actual notice of the intent of the landlord to enter and the landlord or landlord's agent may enter only at reasonable times. The landlord or landlord's agent may not enter if the tenant, after receiving the landlord's notice, denies consent to enter. The tenant must assert this denial of consent by giving actual notice of the denial to the landlord or the landlord's agent or by attaching a written notice of the denial in a secure manner to the main entrance to that portion of the premises or dwelling unit of which the tenant has exclusive control, prior to or at the time of the attempt by the landlord or landlord's agent to enter.

"(2) A landlord may not abuse the right of access or use it to harass the tenant. A tenant may not unreasonably withhold consent from the landlord to enter."

deny his motion to dismiss the complaint. In pertinent part, ORS 105.130 provides:

"(1) Except as provided in this section and ORS 105.135, 105.137 and 105.140 to 105.161, an action pursuant to [the FED statutes] shall be conducted in all respects as other actions in courts of this state.

"* * * * *

"(4) An action pursuant to ORS 105.110 [(providing that circuit courts have jurisdiction over FED actions)] shall be brought in the name of a person entitled to possession as plaintiff. The plaintiff may appear in person or through an attorney. In an action to which ORS chapter 90 applies, the plaintiff may also appear through a nonattorney who is an agent or employee of the plaintiff or an agent or employee of an agent of the plaintiff."

ORS 105.130. Defendant contends that, because FED actions "shall be brought in the name of a person entitled to possession as plaintiff," FED complaints must list, at the outset, the complete name of the landlord and that the failure to do so cannot be cured after filing.

The statute's text, context, and legislative history do not support defendant's interpretation. *See State v. Gaines*, 346 Or 160, 164-65, 206 P3d 1042 (2009); *PGE v. Bureau of Labor & Indus.*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Nor do the rules of civil procedure. Subsection (1) of ORS 105.130 provides that, with exceptions not relevant here, FED actions are to be conducted "in all respects as other actions in courts of this state." That section dovetails with ORCP 1 A, which provides that the Oregon Rules of Civil Procedure "govern procedure and practice in all circuit courts of this state * * * for all civil actions and special proceedings whether cognizable as cases at law, in equity, or of statutory origin except where a different procedure is specified by statute or rule." Thus, because ORS 105.130 does not specify that a party cannot amend an FED complaint to correct a misnamed plaintiff, we apply the rules on amending a complaint found in the Oregon Rules of Civil Procedure. Under those rules, when a party requests to amend a pleading after a responsive pleading is served, the pleading may be amended "by leave of court or by written consent of the

adverse party." ORCP 23 A. Leave to amend "shall be freely given when justice so requires." ORCP 23 A.

Defendant reads the statute's admonition that FED actions "shall be brought in the name of a person entitled to possession as plaintiff" as a bar on any correction of the name of a plaintiff. The Oregon Supreme Court has recognized that nothing in ORS 105.130 creates a procedure for amending an FED action that is different than the procedures provided in the Oregon Rules of Civil Procedure. *Balboa Apartments v. Patrick*, 351 Or 205, 207, 212, 263 P3d 101 (2011) (dealing with amendment to correct apartment number). Similarly, we find nothing in the statute to forbid amendment to provide a more complete description of a landlord's business name. The purpose of ORS 105.130 is simply to identify that the proper party plaintiff is the entity entitled to possession. That purpose is reflected in another provision that lists the essential elements of an FED claim. Among other things, an FED claim must allege "the plaintiff is entitled to the possession of the premises." ORS 105.123(4).

Legislative history confirms that purpose. The text at issue was introduced by an amendment to House Bill (HB) 2628 (1985), which was proposed by Multnomah County Legal Aid Services. During a hearing on the bill, Michael A. Marcus, then an attorney with Multnomah County Legal Aid Services, testified:

> "Specifying that the plaintiff should be a person entitled to possession is designed to avoid the mistake of a manager being listed as 'plaintiff' under circumstances in which the management is not a 'landlord' within the meaning of ORLTA."

Testimony, Senate Judiciary Committee, HB 2628, May 23, 1985, Ex E (statement of Michael A. Marcus).

Because ORS 105.130 authorizes a plaintiff who is entitled to possession of the property to seek possession of the premises, we cannot reasonably infer an implicit proscription against an amendment to better allege a plaintiff's business name. Because that is so, the only question is whether such a correction was permissible under ORCP 23.

Under that rule, a trial court has "broad discretion to allow amendment of pleadings." *Temple v. Zenon*, 124 Or App 388, 390, 862 P2d 585 (1993).

In this case, defendant has not identified any reason why the trial court abused that discretion. *See generally Safeport, Inc. v. Equipment Roundup & Mfg.*, 184 Or App 690, 699, 60 P3d 1076 (2002), *rev den*, 335 Or 255 (2003). We note that plaintiff did not attempt to make any substantive changes to the allegations of the complaint, and plaintiff did not actually change the business entity named in the complaint. Plaintiff merely sought to replace a short version of its name with the full version. In the context of misnaming a defendant, we have observed that "the mere *misnaming* of a party who is correctly served, as opposed to the *misidentification* of a party, commences an action against the correct defendant and, as a result, an amendment that merely corrects the party's name is not a change in parties." *Harmon v. Fred Meyer*, 146 Or App 295, 299, 933 P2d 361 (1997) (emphasis in original). Moreover, the name correction did not prejudice defendant; and, despite his objection, defendant has posited no prejudice. *See* ORCP 12 B (disregard of any error or defect in the pleading that does not affect the substantial rights of the adverse party). Defendant's answer shows that he knew that Willamette Landings - 89, L.L.C. was the entity bringing the FED action to recover possession of his apartment. The trial court did not abuse its discretion when it allowed the motion to amend.

## ATTORNEY FEES

We turn to the supplemental judgment, which imposed $103,308.43 in attorney fees against defendant. Attorney fees were awarded based on ORS 90.255, which provides that the court may award fees in an action on a rental agreement.[2] As to that judgment, defendant makes several assignments of error. We address them in turn.

---

[2] ORS 90.255 provides:

"In any action on a rental agreement or arising under this chapter, reasonable attorney fees at trial and on appeal may be awarded to the prevailing party together with costs and necessary disbursements, notwithstanding any agreement to the contrary. As used in this section, 'prevailing party' means the party in whose favor final judgment is rendered."

First, defendant contends that the trial court erred in awarding plaintiff any attorney fees whatsoever because plaintiff's initial statement for fees, in itself, did not cite or discuss the factors to be considered as to *whether* to award fees, as listed in ORS 20.075(1).[3] Instead, the initial statement identified the relevant factors to be considered for the *amount* of an award, as listed in ORS 20.075(2).[4] After defendant's objection, plaintiff did address the factors of ORS 20.075(1) in a written response and in oral arguments

---

[3] ORS 20.075(1) provides that the factors that a court must consider when deciding whether to award attorney fees include:

"(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

"(b) The objective reasonableness of the claims and defenses asserted by the parties.

"(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

"(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

"(h) Such other factors as the court may consider appropriate under the circumstances of the case."

[4] After the preceding subsection, ORS 20.075(2) provides that the court shall consider additional factors as to the amount of the award:

"(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

"(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

"(c) The fee customarily charged in the locality for similar legal services.

"(d) The amount involved in the controversy and the results obtained.

"(e) The time limitations imposed by the client or the circumstances of the case.

"(f) The nature and length of the attorney's professional relationship with the client.

"(g) The experience, reputation and ability of the attorney performing the services.

"(h) Whether the fee of the attorney is fixed or contingent."

at hearing. Those factors were considered by the court in making the fee award. Nothing prohibited plaintiff from addressing those factors after objection or at hearing. Nothing prohibited a fee award when those factors were not addressed in plaintiff's initial fee statement itself.

Second, defendant assigns error to the court's failure to postpone *sua sponte* the hearing on his objections when he spoke of receiving only recently plaintiff's response to his objections. After the trial, plaintiff had served defendant with a statement for attorney fees on November 20, 2012. On December 4, 7, and 26, defendant filed objections to plaintiff's fee statement. On January 11, 2013, plaintiff filed a response to defendant's objections, arguing that factors in ORS 20.075(1) do support plaintiff's fee statement. Among them, plaintiff identified the "objective reasonableness of the claims and defenses asserted by" defendant, ORS 20.075(1)(b), and the "objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute," ORS 20.075(1)(f). Plaintiff attached several documents to that response, including an affidavit in support of plaintiff's request for attorney fees and costs from Greff, an attorney who practices landlord-tenant law.

The trial court held its hearing that same day. Defendant complained that he had received plaintiff's response and supporting documents "less than 48 hours ago" and that he had not had the opportunity "to review them in detail." He said that it would not be "appropriate or fair for the Court to consider Mr. Greff's affidavit or the other material * * * submitted by the Plaintiff less than two days ago." The trial court responded that "most of the exhibits are nothing that would be a surprise. In other words, most of the exhibits are copies of documents that the parties have already had in discovery and, in some cases, have even been submitted to the Court during the course of this trial." The trial court allowed a recess so that defendant could examine the Greff affidavit.

Defendant never requested that the trial court set over the hearing so that he would have more time than the recess afforded in order to consider the evidence or arguments that plaintiff filed in response to his objections. At

that time, defendant only argued that the court should disregard plaintiff's added evidence. Consequently, defendant did not preserve for review any error in failing to postpone the hearing. He does not seek plain-error review, and we would find no such error.

Third, defendant assigns error arguing that the amount of the attorney fee award was excessive. He does not dispute, at least on appeal, the attorneys' hourly rates or amount of hours. He complains instead about the overall size of the award for an eviction proceeding. He complains that the award would deter many renters from defending themselves against their landlords' attempts to evict them.

The trial court made extensive findings of fact to support its fee decision. Because we conclude that there is sufficient evidence to support those findings, we state the relevant facts as found by the trial court. *See Niman and Niman*, 206 Or App 400, 415-17, 136 P3d 1186 (2006) (standard of review for factual determinations in underlying fee claims depends on the nature of the proceeding, and review in non-equity civil proceedings is for any evidence). The jury determined that the dispute arose when defendant unreasonably refused to allow his landlord access so a painter could paint his door.

Throughout the litigation, defendant failed to "diligently pursue settlement" and rebuffed plaintiff's numerous attempts to settle the case and avoid further litigation expenses. Plaintiff made an offer on the day after the first court appearance. As the case continued, plaintiff made several other settlement offers, requested counteroffers from defendant, asked defendant to clarify what it would take to settle the case, and attempted to get defendant to consent to a judicial settlement conference. Plaintiff's final offer was to pay defendant $6,100 for his alleged damages plus $3,000 for his attorney fees. Plaintiff's offer included a "one year lease at Defendant's current rent amount," "a mutual release," and "a mutual dismissal of all claims with prejudice." Defendant rejected the offer without any explanation.

The trial court deemed defendant's conduct to be unreasonable. The nature of that conduct is illustrated by

defendant's only settlement offer. Defendant offered to settle the case, providing

> "that Plaintiff pay $15,000.00, plus $3,000.00 in attorneys' fees; that Plaintiff provide a written apology; that Plaintiff give Defendant a 2-year rent freeze; that Plaintiff remove a surveillance camera that did not exist; and that Plaintiff provide Defendant with a reference letter. Defendant's offer also demanded that Plaintiff dismiss its claim with prejudice, but specified that Defendant be permitted to preserve all counterclaims."

Defendant's offer demanded that plaintiff pay defendant more than the $5,600 that defendant had alleged as damages in his counterclaims. The court judged defendant's settlement offer to be "greedy, unrealistic, and overreaching." The court found that "[d]efendant's unreasonable settlement positions left [p]laintiff with no choice but to proceed to trial, [where] [p]laintiff incurred significant attorney fees associated with zealously defending itself against [d]efendant's counterclaims."

The trial court's findings recognized that the total award is an unusual amount for an FED case, but, the trial court explained, the case was "not a simple, 'garden variety' forcible entry and detainer case. This case involved depositions, document discovery, significant motions practice, two postponements of trial by [d]efendant, a change in [d]efendant's counsel, several counterclaims, and a two-and-a-half day jury trial." The jury found defendant in breach and rejected his counterclaims. The court found that "[d]efendant's attempt to assert an invasion of privacy claim and a punitive damage claim [were] not objectively reasonable under ORS 20.075(1)(b) in light of ORS 105.132."[5]

In a finding that the record supports, the trial court found that defendant was largely responsible for the unusual amount of plaintiff's attorney fees. Therefore, we conclude that the trial court did not abuse its discretion in making its ruling on attorney fees. ORS 20.075(3) (codifying an abuse of discretion standard).

---

[5] ORS 105.132 provides that "[n]o person named as a defendant in an action brought under ORS 105.105 to 105.168[, which includes FED actions,] may assert a counterclaim unless the right to do so is otherwise provided by statute."

## MOTION FOR RELIEF FROM JUDGMENTS

Defendant assigns error to the trial court's denial of his motion for relief from judgments, which involves a dispute about disbursement of the initial deposit made in support of his undertaking on appeal. In order to remain in possession of the premises and stay enforcement of the judgments, defendant presented the court with a motion for a supersedeas undertaking pursuant to ORS 19.335(2). That statute provides,

> "If a judgment requires the transfer or delivery of possession of real property, a supersedeas undertaking acts to stay the judgment if the undertaking provides that the appellant will not commit waste or allow waste to be committed on the real property while the appellant possesses the property, and the appellant will pay the value of the use and occupation of the property for the period of possession if the [Supersedeas Undertaking of Defendant] judgment is affirmed. The value of the use and occupation during the period of possession must be stated in the undertaking."

To stay the judgments, defendant proposed that he remain on the premises and be required to pay to the court $999 each month. That sum was equivalent to the monthly payment that he was required to pay to plaintiff under the rental agreement.

Plaintiff objected to the terms of defendant's proposed undertaking. Among other things, plaintiff argued that defendant's proposed payment was too low. If the court were to allow a supersedeas undertaking, plaintiff urged defendant should be required to pay a lump sum of $40,764. That amount represented unpaid "rent due from December 2011 through November 2012 [$11,988 due when the FED action was pending], *** plus an additional 24 months' rent [$28,776] at $1,199.00, the fair market rental value for the estimated time of appeal."

The trial court ordered a stay and allowed a supersedeas undertaking that, although excluding payment of back rent, required defendant to pay a lump sum for the value of occupancy for a future 24 months, which was equivalent to the past rent of $999 monthly. The court ordered that,

"[a]s a condition of stay of execution of the General Judgment of Restitution entered on November 13, 2012, a sufficient undertaking requires that Defendant pay into court the sum of $23,976.00 as a lump sum undertaking, representing the estimated 24 month length of the appeal times the current monthly rent for the subject premises, no later than February 1, 2013."

Defendant posted the smaller sum that the court had set.

In January 2015, more than 24 months later, the undertaking became an issue. Plaintiff filed a motion for the "partial release of the supersedeas undertaking and to replenish supersedeas undertaking." The court granted that motion and ordered the funds to be released to plaintiff, representing "the value of the use and occupation of the property for the period of possession," the period which had just passed.

Defendant then filed a motion under ORCP 71 B(1)(e) for relief from the judgments against him.[6] He argued that those judgments should be deemed to be released or discharged because, when the court ordered the release and replenishment of the fund for the undertaking, plaintiff had accepted "rent" from defendant and reinstated their rental agreement. The court denied defendant's motion.

On appeal, defendant assigns error to that ruling. He reiterates that, under principles of landlord-tenant law, plaintiff's receipt of rent reinstated "the underlying rental agreement." We have observed, generally, that "when a landlord learns that a tenant has breached the lease in such a way that provides the landlord with a basis to terminate the lease, the landlord must not accept performance of lease obligations by the tenant if the landlord wishes to terminate the lease for the breach." *C & K Market, Inc. v. Roccasalva*, 246 Or App 277, 281, 265 P3d 81 (2011); *see also Smith v. Hickey*, 45 Or App 139, 143, 607 P2d 787 (1980) (acceptance

---

[6] ORCP 71 B(1) provides, in pertinent part,

"the court may relieve a party or such party's legal representative from a judgment for the following reasons: * * * (e) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application."

of rent after lessee's nonpayment of taxes). Outside residential landlord-tenant law, that principle has been codified in ORS 91.090, which addresses the consequence of the failure to pay disputed rent. That statute provides:

> "The failure of a tenant to pay the rent reserved by the terms of the lease for the period of 10 days, unless a different period is stipulated in the lease, after it becomes due and payable, operates to terminate the tenancy. No notice to quit or pay the rent is required to render the holding of such tenant thereafter wrongful; however, *if the landlord, after such default in payment of rent, accepts payment thereof, the lease is reinstated for the full period fixed by its terms,* subject to termination by subsequent defaults in payment of rent."

ORS 91.090 (emphasis added). When, during an appeal, ranch lessors accepted payment of the past-due rent, "*upon which their [FED] action is predicated,*" the lease was held to be "reinstated." *Reeves v. Baker,* 270 Or 837, 840, 530 P2d 30 (1974) (emphasis added). That principle does not govern here for several reasons.

First, ORS 91.090 does not apply to tenancies subject to the Residential Landlord Tenant Act. ORS 90.120 (inapplicability of other specified statutes); *see, e.g., Commonwealth Property Management v. Hanson,* 94 Or App 136, 141, 764 P2d 950 (1988) (referring to *former* ORS 91.720 (1987), *renumbered* as ORS 90.120).

Second, that "statute operates to reinstate a lease only when the landlord accepts payment of the entirety of the rent that the tenant has failed to pay." *C & K Market, Inc.,* 246 Or App at 280 n 1 (citing *Reeves,* 270 Or at 840, for the proposition that the statute only applies when rent is accepted that is "the rent 'upon which [the] action is predicated'"). In this case, the dispute was not about defendant's failure to pay the year's rent that had been lost during the pendency of the trial court proceedings. The trial court did not require defendant to post the $11,988 past due rent. And, plaintiff did not accept any past-due rent, upon which the FED action was based, when the undertaking deposit was disbursed.

Third, the sum of $23,976, which defendant posted in order to effect a stay of the judgments, was not paid pursuant to a rental agreement. That sum was paid pursuant to ORS 19.335(2) as the "value of the use and occupation of the property for the period of possession" during that initial two-year period upon appeal. Plaintiff did not willingly suffer defendant's tenancy during that appeal period. Rather, defendant forced plaintiff's forbearance to abide his unwanted tenancy with an undertaking intended to avoid prejudice to plaintiff. By accepting payment at the end of the contemplated two-year period, plaintiff avoided the further prejudice from delay of payment during a protracted appeal. In doing so, plaintiff did not accept any past-due rent, upon which an eviction judgment in another case might have been premised. Rather, this eviction judgment was premised upon defendant's breach of his duty to permit repairs. Acceptance of the undertaking's sum did not waive any dispute over defendant's breach, nor serve to reinstate defendant's rental agreement.

For those reasons, the trial court did not err in denying defendant's motion for relief from the judgments.

## LATER UNDERTAKING ISSUES

Defendant seeks review of the last three orders relating to his undertaking on appeal. Under ORS 19.360, a party who is aggrieved by a trial court's order on an undertaking may seek review by motion within 14 days of entry of the order. Defendant did not seek review of the initial order requiring deposit of $23,976 for the value of occupancy of the premises for the first two years of the appeal. When the two-year period expired, the trial court ordered disbursement of that sum and ordered defendant to deposit $16,788 for a third year of appeal, based on a value of occupancy at $1,399 per month. Defendant did not seek review of that order, either. As the third year on appeal ended, plaintiff moved again that the court order the release of the $16,788 deposit and order a renewal of the deposit for the coming fourth year on appeal. In February 2016, the court did so, disbursing the third-year funds and requiring another $16,788 deposit.

From that last order, defendant does seek review. Defendant assigns additional error disputing (a) the court's

release of deposited funds ($16,788) for the third year of the undertaking, (b) the continued increase in the amount of the required deposit, which was based on an increase in the value of occupancy, and (c) the court's denial of discovery on the value of occupancy. We reject each of those added issues.

Defendant opposes disbursement of the funds deposited in the third year of the appeal, arguing that, "after filing an FED case, a landlord must forego rent until the matter is decided on appeal and an appellate judgment is issued." That argument is inapt. *See Commonweath Property Management,* 94 Or App at 142 ("the court did not err when it awarded plaintiff the rent that defendants had tendered into court and at the same time restored possession of the premises to plaintiff"). Indeed, plaintiff and defendant both agree that defendant owes the value of occupancy during the appeal regardless of the outcome of the appeal. We find no authority for the proposition that, during appeal under these circumstances, the landlord must abide an unwanted tenancy and suffer delay in payment for the value of that occupancy. We note that ORS 19.360(1) provides:

> "The trial court may impose terms or conditions on the stay or take such other action as may be necessary to prevent prejudice to the parties."

No purpose other than prejudice would be served by denying plaintiff receipt of the undertaking deposit upon the expiration of the intended period during appeal. Therefore, when releasing the deposited sum, the trial court did not err.

Defendant disputes the court's authority to increase the amount of the deposit for an added year of an undertaking that stays the judgments. There is, however, no question that the court may entertain plaintiff's objections to the amount or sufficiency of the security given for an undertaking. *See* ORS 19.305(3) (concerning objections to the sufficiency of an undertaking). When the court entertained plaintiff's request to increase the sum at the end of the initial two-year period, defendant did not appeal the order that increased the annual sum from the equivalent of $999 per month to the equivalent of $1,399 per month. Defendant only appealed the most recent order that extended that increased sum for a fourth year.

Assuming the increase was an issue not waived but one that may be raised with the more recent order, we are unpersuaded that the court lacked authority In rulings on the terms of a stay for a third year and a fourth year, the court held two hearings on the issue of the undertaking. The court had evidence in the form of the declaration of the resident manager of the apartment where defendant resides. She declared that the value of the apartments had increased since the appeal began, and she stated that $1,399 per month was the value of occupancy of defendant's apartment. By that time, defendant's rental agreement was nearly five years old, and defendant offered no evidence to contest that valuation. In adjusting the sum required to stay the judgments, the trial court did not err.

Defendant contends that the trial court erred by denying his motion to permit discovery, pursuant to ORCP 37 B, about the increased value of occupancy. We are unpersuaded.[7] Defendant had hearings in two different years in which to contest the increased sum for the value of his occupancy. Such hearings are hearings related to the sufficiency of the security for an undertaking. *See* ORS 19.305(3). They are not necessarily trials to be preceded by the usual panoply of pretrial discovery. As such, whatever discovery may be appropriate is a matter within the discretion of the court. *See, e.g.,* ORCP 37 B (discovery concerning matter pending on appeal). Nothing precluded defendant from offering contrary evidence of market value of the occupancy at either of the two hearings. Instead, defendant had chosen to serve plaintiff with a request for documents that ranged from rent checks from other tenants to documents about other tenants' disputes over rent, documents about any reports about defendant, and documents about another tenant's opened mailbox and mail on the ground. In denying defendant's request to open discovery during appeal under ORCP 37 B, the trial court did not abuse its discretion.

---

[7] Defendant relies on *LIG Investments LLC v. Roach*, 215 Or App 210, 170 P3d 561 (2007). Unlike that case, there is no indication, in this case, that plaintiff agreed with defendant that the fair market rental value was a lesser figure or that the higher sum sought, in addition to market value, added costs of borrowing, interest on profit from a delayed sale of the premises, or any other unusual factor. Nor is there any indication, as in *LIG Investments*, that the trial court used the wrong measure of value—an error that would require a new hearing at which to employ the correct standard. Defendant's reliance on that case is misplaced.

## CONCLUSION

After review of the issues of the general judgment, the supplemental judgment, the motion to set aside the judgments, and the motion appealing the order on the undertaking, we conclude that the trial court committed no error.

Motion for review of order on undertaking allowed; judgments and order on undertaking affirmed.