On appellant's petition for reconsideration and for reconsideration en banc filed October 1, and respondent's response to appellant's petition for reconsideration filed October 5, reconsideration allowed; former opinion (280 Or App 703, 382 P3d 512) modified and adhered to as modified December 14, 2016

WILLAMETTE LANDING APARTMENTS - 89, LLC,
aka Willamette Landing,
*Plaintiff-Respondent,*

*v.*

Boyd BURNETT,
and all others,
*Defendant-Appellant.*

Marion County Circuit Court
11C24969; A152926

387 P3d 501

Boyd Burnett for petition.

Courtney C. Dippel, Zachariah H. Allen, and Folawn Alterman & Richardson LLP for response.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**DEVORE, J.**

Defendant petitions for reconsideration of all issues in our decision in this case. *Willamette Landing Apartments v. Burnett*, 280 Or App 703, 382 P3d 512 (2016). We understand him to contend that this court erred in construing or applying the law. *See* ORAP 6.25(1)(e) (providing that ground for reconsideration). We allow his petition to reconsider one issue and otherwise reject his arguments without written discussion. We modify our opinion in order to address expressly, rather than implicitly, a statute that defendant stresses, in order to be clear that we have considered and distinguished it.

Defendant assigned error to the trial court's denial of his motion for relief from judgment under ORCP 71 B(1)(e), which allows relief from a judgment that "has been satisfied, released, or discharged." Judgment had been given for restitution of the premises by reason of defendant's breach of his agreement to permit access for repairs. Defendant sought to stay enforcement of that judgment by interposing a supersedeas undertaking on appeal in the form of a sum of $23,976, representing the value of the future occupancy of the premises during appeal. The trial court had specifically calculated that sum so as to exclude past rent of $11,988 from the undertaking sum. After lapse of the first two years on appeal, the court allowed release of the undertaking sum to plaintiff and ordered replenishment of the undertaking for the appeal in succeeding years.

Under common law principles, defendant contended that, when a landlord accepts the payment of the rent that had formed the basis for eviction, the landlord waives the breach and reinstates the lease. *Willamette Landing Apartments*, 280 Or App at 715-16 (quoting *Reeves v. Baker*, 270 Or 837, 840, 530 P2d 30 (1974)). We noted that that general principle finds expression in ORS 91.090, which provides, in part, "if the landlord, after such default in payment of rent, accepts payment thereof, the lease is reinstated." *Willamette Landing Apartments*, 280 Or App at 716. We held that such a general principle does not apply when the landlord has not accepted past rent upon which a judgment was based and has instead recovered payment of the post-judgment value

of the use and occupation of the premises, not by a voluntary agreement, but by the intervention of a law that interposes a stay and an unwanted tenancy during appeal. *Id.* at 717. The landlord had not accepted the $11,988 that was prejudgment rent. Moreover, the judgment had been based on defendant's breach of cooperation in maintenance. *Id.* at 716. Seen in terms of ORCP 71 B(1)(e), the judgment for restitution of the premises, based on those failures, had *not* been "satisfied, released, or discharged."

Once again, defendant cites cases illustrating the general rule involving a landlord's voluntary acceptance of the prejudgment rent, but they add nothing to the analysis because they involve the general rule. For example, in *Reeves*, the court concluded "that when plaintiffs after default in payment of the rent accept payment of the rent upon which their action is predicated, the lease was 'reinstated' * * *." 270 Or at 840; *see also C & K Market, Inc. v. Roccasalva*, 246 Or App 277, 282-83, 265 P3d 81 (2011) (landlord's acceptance of base rent waived right to terminate lease); *Clackamas Town Center v. Jandel Foods, Inc.*, 88 Or App 72, 74, 744 P2d 280 (1987) (landlord's acceptance of rent in dispute waived the payment breach).

More particularly, defendant complains that our opinion did not address ORS 105.161(4), a provision he cited, involving actions for forcible entry and detainer (FED). After the statute describes the process by which a sheriff enforces a writ of execution on an FED judgment, ORS 105.161(4) adds that "[a] judgment may not be enforced if the parties have entered a new rental agreement or if the plaintiff has accepted rent for a period of occupancy beginning after the judgment was entered." The statute aids defendant little, if it is understood to mean that creation of a "new rental agreement" or voluntary acceptance of rent for a post-judgment period renders the eviction unenforceable. That would be little more than an elaboration on the general rule, and the statute would fail to reach the question presented here.

Defendant urges that the statute means more. He contends that ORS 105.161(4) addresses the relationship of landlord and tenant after judgment, even when an eviction judgment is stayed on appeal and the tenant holds over, not

by voluntary agreement, but by imposition of law. Defendant cites no authorities that support the application of ORS 105.161(4) under circumstances involving stays on appeal, and we are aware of none.

The circumstances involving defendant's occupancy during an appeal do not comport with ORS 105.161(4). That is because defendant's stay of the judgment forces an unwanted occupancy of the premises. There is no voluntary "agreement" between landlord and tenant after the eviction judgment, and the landlord has not voluntarily "accepted rent" for the post-judgment period, within the meaning of ORS 105.161(4).

As defined by the Residential Landlord Tenant Act, "'[r]ent' means any payment to be made to the landlord *under the rental agreement,* periodic or otherwise, in exchange for the right of a tenant and any permitted pet to occupy a dwelling unit to the exclusion of others and to use the premises." ORS 90.100(37) (emphasis added). A "'rental agreement' means all agreements, written or oral, and valid rules and regulations adopted under ORS 90.262 or 90.510(6) embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises." ORS 90.100(38).

A landlord who received an interim or ultimate payment of an undertaking sum, during or after an appeal, merely receives payment to avoid prejudice of an unwanted occupancy pursuant to ORS 19.335(2). Because there is no mutual agreement, nor a voluntary "acceptance" of "rent" under a "rental agreement," ORS 105.161(4) has no application to circumstances involving stays on appeal.

Instead, the statute that governs these circumstances is ORS 19.335(2), which provides:

> "If a judgment requires the transfer or delivery of possession of real property, a supersedeas undertaking acts to stay the judgment if the undertaking provides that the appellant will not commit waste or allow waste to be committed on the real property while the appellant possesses the property, and *the appellant will pay the value of the use and occupation of the property for the period of possession* if the judgment is affirmed. The value of the use and

occupation during the period of possession must be stated in the undertaking."

(Emphasis added.) This provision allows a tenant to remain in possession of the property, despite the landlord's wishes and contrary to the FED judgment, in exchange for an immediate undertaking to assure payment of the value of the unwanted use and occupancy of the property during an appeal. In this case, defendant's obligation to pay the "value of the use and occupation during the period of possession" on appeal does not depend upon whether the judgment below is affirmed; defendant conceded he owes that value of the extended occupancy regardless of the outcome of the appeal.

If, as defendant urges, ORS 105.161(4) were construed so broadly as to address circumstances involving appeals, then that statute would conflict with ORS 19.335(2). That conflict would occur because, if the landlord *ever* receives money for the value of the occupancy, even after an appellate judgment, then the landlord's receipt is literally "after the [eviction] judgment was entered" and the FED judgment "may not be enforced." *See* ORS 105.161(4) (proscribing enforcement of judgment after acceptance of rent). That conflict, however, need not occur if the statute is properly construed. Generally, we construe statutes so as to reconcile them and avoid conflict, understanding that reconciliation to be the probable intention of the legislature if it had considered the issue. *See, e.g., Carlson v. Myers*, 327 Or 213, 226, 959 P2d 31 (1998) (so stating). Therefore, we understand ORS 19.335(2), not ORS 105.161(4), to govern the circumstances of an involuntary tenancy occurring as a result of a stay of judgment on appeal.[1]

This conclusion is paralleled by our decision in *Shlim v. Alimeg, Inc.*, 87 Or App 178, 742 P2d 54, *rev den*, 304 Or 547 (1987), *cert den*, 487 US 1218, 108 S Ct 2872, 101 L Ed 2d

---

[1] Although a markedly different problem with statutes, we did face a seeming conflict between the effect of ORS 19.335(2), staying a judgment, and an FED statute, ORS 105.159(3), where the stay would seem to preclude much of the 60-day period in which to issue a writ of execution of judgment of restitution. In *Pine Ridge Park v. Fugere*, 252 Or App 456, 462, 287 P3d 1268 (2012), *rev den*, 353 Or 280 (2013), we read the provisions together so as to toll the 60-day period during the appellate stay. Although a different problem, we read ORS 105.161(4) and ORS 19.335(2) so as to avoid conflict.

907 (1988). In that case, the lessee and sublessee had failed to pay rent in a December and the following January. *Id.* at 180. The landlord's FED action was stayed by the lessee's bankruptcy, but the bankruptcy court had ordered "administrative rent" for February, March, and April. *Id.* at 181. When the stay ended, the defendants argued that the landlord's acceptance of the recent sums paid during the stay served to reinstate the lease. *Id.* We held, however, that the payments made during the stay did not waive the lessee's default or reinstate the lease. *Id.* The same is true here. The payments were made, not for past rent but for the value of the unwanted occupancy during appeal.

The purpose of ORS 19.335(2) leaves no doubt about our conclusion. While an appellant is permitted to interpose a stay of the judgment of restitution of the premises, the protection afforded appellant during appeal gives rise to a concomitant responsibility that the respondent-landlord should not be prejudiced by the appeal. As written, the stay statute intends a balance. An appeal poses the risk of prejudice in the form of an extended, unpaid occupancy and, for that, the appellant must post with the court the value of the unwanted occupancy during the appeal. That appeal poses the added risk of prejudice that the landlord could be delayed receipt of that payment for years. Here, for example, four years has run since this FED judgment. Yet, appellant argues for just such a delay in payment and argues that payment any sooner invalidates the FED judgment.

As implemented by the trial court, ORS 19.335(2) serves to avoid prejudice to either party. The statute should not be construed to require a delay in payment of the value of the occupancy until the end of an appeal, nor should it mean that the landlord's receipt of payments should cause the landlord to forfeit its recovery of the premises. Therefore, the trial court did not err in denying defendant's motion for relief from judgment under ORCP 71 B(1)(e). The FED judgment was not "satisfied, released, or discharged."

Reconsideration allowed; former opinion modified and adhered to as modified.